WILLIAM WISNIESKI, APPELLANT, v. HENRY MOELLER ET AL., APPELLEES.

86 N. W. 2d 52

Filed November 22, 1957. No. 34234.

*Sidner, Lee, Gunderson & Svoboda,* for appellant.

*Healey, Davies, Wilson & Barlow, Patrick W. Healey,* and *Richards, Yost & Schafersman,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action for damages for personal injuries arising out of an accident involving two automobiles. Plaintiff was a guest passenger in one of the cars. He sued the owner of the car in which he was riding, alleging gross negligence. He sued the owner of the other car, alleging negligence. Issues were made and trial was had. At the close of plaintiff's case-in-chief, each defendant made separate motions for directed verdict or dismissal. The court sustained each motion and dismissed the action as to each defendant.

Plaintiff filed a motion for a new trial. It was over-ruled. Plaintiff appeals.

We affirm the judgment of the trial court.

It was stipulated that the cars involved in this accident were family purpose cars. The drivers of the cars were sons of the owners. The action is against the owner of each car.

Plaintiff was a guest passenger in the Plymouth car owned by defendant Navratil. We will hereafter refer to it as the Plymouth car. Navratil by answer denied gross negligence, and alleged that the proximate cause of the accident was the negligence of the driver of the Moeller car. It was a Ford. It will be hereafter referred to as the Ford car. Navratil also alleged contributory negligence of the plaintiff and assumption of risk.

Moeller, owner of the Ford car, by answer denied negligence, alleged contributory negligence, and alleged that the proximate cause of the accident was the gross negligence of the driver of the Plymouth car. He further alleged that the plaintiff and the other occupants of the Plymouth car were engaged in a joint enterprise to run down and stop the Ford car and inflict bodily harm to its occupants. The reply was a general denial except as to allegations which were admissions against interest.

The plaintiff in a motion for a new trial alleged several of the grounds set out in section 25-1142, R. R. S. 1943. He then alleged error as to sustaining the motion of defendant Moeller and error as to sustaining the motion of defendant Navratil, and that the court erred in not submitting to the jury the question of which party's negligence, if any, was the proximate cause of the injury.

Each of the defendants here contends that the one motion was insufficient and rely on the rule stated in Gunn v. Coca-Cola Bottling Co., 154 Neb. 150, 47 N. W. 2d 397, that where a verdict is returned against a plaintiff and in favor of several defendants, on different, distinct, and separate defenses pleaded separately by them, a single joint motion for a new trial against them all is

insufficient, and it should be overruled if the verdict is good as to any one of the defendants. The motion here does not fall within the restricted scope of that rule. We hold the motion sufficient.

We go, then, to the evidence and issues presented.

Plaintiff called and offered the evidence of all the available witnesses and participants in the events of the afternoon resulting in the accident. The evidence of the occupants of the Ford car was, in many respects, in direct conflict with that of the occupants of the Plymouth car. In detail the evidence of witnesses within each group showed discrepancies. In part the evidence of each group was in accord with the other.

All witnesses agree that there were three occupants in the Ford car and four occupants, including the plaintiff, in the Plymouth car. One of the occupants of the Plymouth car was killed in the accident and plaintiff was seriously injured.

The evidence is in accord that the two cars and occupants were in the city of Dodge at the same time on a Sunday afternoon.

The evidence of the Ford car occupants is that near the city auditorium the Plymouth car came by them and that an occupant of the Plymouth car cursed the occupants of the Ford car and told them to get out of town. The evidence of the Ford car occupants is that they drove to the west side of the city of Dodge where they passed the Plymouth car and the driver of the Ford car told the occupants of the Plymouth car that he did not like to be called names. The occupants of the Plymouth car denied these two statements and stated they had no knowledge of the presence of the Ford car in Dodge.

The Ford car left Dodge and proceeded in the general direction of Wisner. A mile or more out, while the Ford car was traveling on a graveled road 14 or more feet in width, at a speed of 45 to 50 miles an hour, the Plymouth car overtook and ran into the rear of the Ford.

All witnesses agree as to that and that it was not a severe bump. After this collision neither car stopped. The Ford car proceeded on down the road and went toward Wisner, and the Plymouth car followed. After a short distance, the hood of the Plymouth car came loose and flew up. The car was stopped. The occupants got out and pulled the grille into place so as to hold the hood down. They then agreed that they would run down the Ford car and find out why it did not stop at the scene of the collision. The plaintiff and the driver of the Plymouth car both agree that was their plan. There is no dispute about it. The four men then got into the car and proceeded to execute the plan, without protest or disagreement among them.

At that time the Ford car had about 5 minutes' head start. Several miles further, and about a mile from the scene of the accident, the two cars went past a farm house at about 60 miles an hour, the Ford leading and the Plymouth following at about a 40 to 50-foot intervening distance. Both cars were traveling in the center of the road at that time. Occupants of the Ford car testified that when they observed the Plymouth car following and closing the interval between them, the Ford car was accelerated to its maximum speed of from 70 to 80 miles per hour. The traveled portion of the highway at this point was graveled and from 16 to 18 feet in width. The ditch alongside the road was not deep, and was estimated by one witness at 1½ feet below the road at its lowest point. The above evidence is not in serious dispute.

Occupants of the Ford car testified that when the Plymouth car got close to them, someone in the Plymouth car shook a wrench or jack handle at them. The occupants of the Plymouth car deny that evidence.

Occupants of the Plymouth car testified that when they were 25 or 30 feet behind the Ford car, the driver of the Plymouth car blew its horn; that the Ford car then pulled to the right; that the Plymouth car started

to pass on the left; and that the Ford car then pulled back into the center of the road so that its left side was about 3 feet over the center of the traveled portion of the road.

The Plymouth car then veered to the left so that its two left wheels were off the graveled portion of the road, and was tipping slightly. In that position, with two wheels off and two wheels on the graveled portion of the road, the Plymouth car proceeded a distance of 326 feet; then veered to the right, went across the highway a distance of 51 feet, struck a guy wire on a telephone pole and rolled over, and came to rest a distance of 707 feet from the place where the wheels first were off the graveled portion of the road.

Occupants of both cars testified that there was and was not contact of the two cars before the Plymouth turned off the road as above stated. The evidence is that there was a dent in the gravel pan of the Ford car at its left rear. There was no sign of an impact on the left side of the Ford car. Photographs of the car sustain this evidence.

The driver of the Plymouth car testified as follows: "Q- There was a car going down the center of the road in front of you and you gave him your horn and tried to pass that car going faster than 60? A- How else would you pass? Q- You didn't have to pass did you? A- How else could I stop him? Q- Did you have to stop him? A- I wanted to know why he didn't stop."

Plaintiff argues here that he has produced evidence in conflict from which the jury could arrive at the conclusion that the accident was caused by the Plymouth car running into the rear of the Ford car a second time with the resultant loss of control and that if the jury so believed, then he would be entitled to a judgment against the owner of the Plymouth car. Or the jury could disbelieve that evidence and find that the cause of the accident was that of the Ford car in veering to the left and forcing the Plymouth car off the road, and that he would

be entitled to a judgment against the owner of the Ford car.

This presents a question of the right of a plaintiff to knowingly produce conflicting evidence on material facts and then be permitted to go to a jury and ask it to choose which evidence is true and which is false. We need not determine that question.

The evidence of the plaintiff and his witnesses from the Plymouth car shows without dispute the following facts: Following the rear end collision with the Ford car, the occupants of the Plymouth car, including the driver and plaintiff, got out of the car and pulled the grille into place so as to hold the hood down. They then agreed to follow or "run down" the Ford car, stop it, and find out why it did not stop. They then got into the Plymouth car and proceeded to execute that plan. They did it without regard to the safety of the occupants of either car, to legal speed limits, the condition of the road, or the rights of other users of the highway. All of the occupants of the Plymouth car, including the plaintiff, participated in the execution of the plan. It affirmatively appears that after the chase began, no occupant of the Plymouth car made any protest as to what was being done or how it was being done.

We recently restated the rule that a person who knowingly and of his own volition exposes himself to obvious danger cannot recover damages for any injury which he might have avoided by the use of reasonable care. Ecker v. Union P. R. R. Co., 164 Neb. 744, 83 N. W. 2d 551.

Here there is no evidence of the use of reasonable care. It affirmatively appears that no care was used.

The trial court did not err in sustaining the motions to dismiss the causes of action.

The judgment of the trial court is affirmed.

AFFIRMED.

YEAGER, J., participating on briefs.