DOROTHY O'BRIEN, APPELLANT, V. LEROY W. ANDERSON, APPELLEE.

130 N. W. 2d 560

Filed October 9, 1964. No. 35700.

636

John F. McCarthy, for appellant.

Luebs, Elson, Tracy & Huebner, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

This is an action at law brought by Dorothy O'Brien,

plaintiff, against LeRoy W. Anderson, defendant, to recover damages for personal injuries suffered by the plaintiff while riding as a guest in the defendant's car. The case was tried to a jury resulting in a verdict for the defendant. The plaintiff filed a motion to set aside the verdict and render a decision for the plaintiff, or in the alternative to grant the plaintiff a new trial. Motion for new trial was overruled and the plaintiff appealed.

The plaintiff's petition alleged that she was an invited guest riding in the defendant's car; that upon approaching the intersection of Eddy Street with Fourth Street in Grand Island, Nebraska, the defendant drove and operated his car in such a grossly negligent manner and in such willful and wanton disregard of the safety of the plaintiff that he caused the same to collide with the rear of a 1956 Buick sedan owned and operated by Virgil R. Fittje who was stopped, waiting for a red signal light to change from red to green, and who was proceeding ahead of the defendant's car in the same general direction on the same street; and that the car driven by the defendant crashed into the rear end of the Fittje car. The plaintiff further alleged that the collision was caused by the gross negligence of the defendant as follows: Operating his motor vehicle at so great a rate of speed and failing to reduce his speed although the automobile owned by Virgil R. Fittje was stopped with his red signal lights on indicating that he was stopped on the highway, with red lights visible for a distance of 200 feet; failing to observe the signal of the car ahead; failing to yield the right-of-way to the traffic of the car ahead; and operating an automobile while under the influence of intoxicating liquor.

The defendant's answer denied generally each and every allegation of the plaintiff's petition; and specifically denied that he was operating his car while under the influence of intoxicating liquor and that he was guilty of gross negligence. For an affirmative defense, the defendant alleged that if he had been operating a motor

638

vehicle while under the influence of intoxicating liquor, then the plaintiff assumed the risk because the plaintiff knew the alleged condition of the defendant, appreciated the danger that alleged condition would have created, and deliberately exposed herself thereto. For his second affirmative defense the defendant alleged that the plaintiff failed to protest or complain to defendant about the manner of his driving, failed to warn him of a danger of which she knew or reasonably should have known, and failed to exercise ordinary care for her own safety in that she voluntarily entered an automobile driven by a person whom she claimed was under the influence of intoxicating liquor.

The plaintiff's reply denied all the allegations of the defendant's answer except such as admit allegations of the plaintiff's petition.

The plaintiff's pertinent assignments of error are as follows: That the verdict is contrary to the evidence and the law; that the trial court failed to instruct the jury to find for the plaintiff if the accident was the proximate cause of the injuries to the plaintiff; that the trial court erred in giving instructions Nos. 3, 4, 5, 6, 8, and 12; that the trial court erred in giving an instruction on the assumption of risk; that the trial court failed to give any instruction as to the statutory rules of the road and the requirements of the use of lights or signal lights; and that the trial court erred in singling out a particular part of the evidence expressing an opinion as to its weight, its strength, and its probative force.

On January 1, 1962, at about 1:49 a.m., the defendant, owner of a 1952 Dodge four-door sedan operated by him, was in a collision with a 1956 Buick sedan operated by Virgil R. Fittje. The collision occurred at the intersection of Fourth and Eddy Streets in Grand Island. At the time of the collision the plaintiff was an invited guest passenger in the defendant's car and was riding in the front seat thereof.

Section 39-740, R. R. S. 1943, provides in part: "The

owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in such motor vehicle as a guest or by invitation and not for hire, unless such damage is caused by the driver of such motor vehicle being under the influence of intoxicating liquor or because of the gross negligence of the owner or operator in the operation of such motor vehicle. For the purpose of this section, the term guest is hereby defined as being a person who accepts a ride in any motor vehicle without giving compensation therefor, * * *."

"There is no fixed rule for the ascertainment of what is gross negligence, but whether or not gross negligence exists must be determined from the facts and circumstances in each case. * * * Gross negligence within the meaning of the motor vehicle guest statute is great and excessive negligence in a very high degree. It indicates the absence of slight care in the performance of a duty. * * * Ordinarily the question of gross negligence is one of fact for a jury, but if the evidence respecting it is not in conflict or is so conclusive that ordinary minds may not draw different conclusions therefrom the question is one of law for the court." Cole v. Wentworth, 175 Neb. 325, 121 N. W. 2d 567.

The first witness called for the plaintiff was the defendant. He testified that he was involved in an automobile accident on January 1, 1962, when the plaintiff was riding with him. He further testified that he drove across Third Street and started down the underpass, and when he got to the bottom of the underpass he could see a car stopped; that he drove a little farther and saw that the traffic light ahead was red; that he proceeded on, looked up and the light was changing to green; and that when he got about two car lengths he looked down and saw a car in front of his car but did not have time to stop due to the ice, and he hit the car in front of him. After the impact he sat in his car for a minute, looked over at the plaintiff, and tried to open the door but it

was sprung and he could not get out of his car. He finally did get out. Some police officers arrived and wanted to see his driver's license which he showed them. They started charting the accident. The emergency unit came and took the plaintiff to the hospital.

Alfred Grubbs, a police officer, testified that he was called to the scene of the accident; that the weather was clear; that the surface of the highway was concrete, and there was some ice on the roadbed; that there were two traffic lights at the intersection of Fourth and Eddy Streets, one for northbound and southbound traffic and one for eastbound and westbound traffic; that the defendant and Virgil R. Fittje were involved in an accident; and that the defendant stated that the light was changing and he kept going and then saw the other vehicle stopped at the intersection and applied his brakes but could not stop. This witness further testified that he talked to the defendant who appeared to be all right, and no ticket was issued for a traffic violation.

Ray Scarborough, a police officer, testified that he was called to the scene of the accident; that he went there with officer Hansen; that he found that two automobiles had been in an accident and a lady was injured; and that the plaintiff was in the automobile operated by the defendant and had blood on her face. This officer further testified that he saw the defendant walking around and he seemed to be all right. On cross-examination he testified that there was no indication that the defendant was under the influence of alcoholic liquor.

James M. Hansen, a police officer, testified that he was called to the scene of the accident, and proceeded to direct traffic; and that he observed the defendant who appeared to be all right, he walked good and his speech was all right. On cross-examination he testified that there was nothing he knew of that would indicate that

the defendant was under the influence of intoxicating liquor.

Kenneth R. Carlisle testified that he was operating his car in the vicinity of Fourth and Eddy Streets at about 1:40 a.m., on January 1, 1962; that he was going south on Eddy Street and had stopped at the red light; that there was a car headed north that was stopped at the street light and a car coming underneath the underpass that ran into the back end of the car that was stopped at the street light; that when the impact occurred, the light was still red and it was just time for it to change; that the warning light came on at the time of the accident; that the defendant's car hit the car ahead of him as the light changed to green; and that he could smell liquor on the defendant, but the defendant walked normally, talked normally, and appeared to be scared. On cross-examination he testified that there was nothing to indicate that the defendant was under the influence of intoxicating liquor.

The plaintiff testified that she was acquainted with the defendant and had a date with him on New Year's Eve 1961; that the defendant called at her residence around 10 p.m.; that they went to the V. F. W. Club; that upon arriving at the club, the defendant seated her, and left to visit other people who were there; that she asked the defendant to take her home three or four times, and he finally agreed to take her home; and that the defendant did some drinking at the club, but she did not know how much. She further testified that as they went over to the car, she suggested that she drive; that he said he would drive, and she thought if he was able to that he could drive; that he drove underneath the underpass, and when they were in the middle of the underpass she noticed a car stopped at the red light ahead; that the automobile ahead of them, and which was stopped, had red lights but they were not bright; that she figured that the defendant would pull around because there was nobody on the right side, and she

thought the defendant would stop; that when she noticed that the defendant was not going to stop was at the time of the impact; that she did not say anything to the defendant, she was shocked and unable to talk, but knew something was going to happen; and that after the impact she knew something had happened, but she was "knocked a little unconscious."

On cross-examination the plaintiff testified that when the defendant came for her she could smell liquor on him; that they parked in front of the Elks Club and walked over to the V. F. W. Club; that the defendant sort of stumbled, but that could have been his normal procedure of walking; that she thought he was walking normally; that she thought the defendant was under the influence of intoxicating liquor but not to the extent that he did not know what he was doing; that at the V. F. W. Club the defendant was not sitting with her but was at the bar; that she had one and a half drinks, and did not know how many the defendant had because she was sitting at a table by herself; and that she did not know whether the defendant had anything to drink on the evening of December 31, 1961, nor the early morning of January 1, 1962, when he was at the V. F. W. Club. The plaintiff testified in her deposition that the defendant acted like he had been drinking when he picked her up; that after they parked the car and walked to the V. F. W. Club the defendant was staggering; that his speech was "blurry-like"; that he was under the influence of alcoholic liquor; that she would say that he was intoxicated; and that he remained under the influence of intoxicating liquor all evening up to and including the time that the accident happened. The plaintiff further testified that she did not have an opinion as to the speed of the defendant's car; that there was nothing abnormal about the defendant's driving, other than it seemed he was going a little faster than he should in approaching a red light and a car stopped ahead of him; that she did not know

if there was any change in the speed of the defendant's car from the middle of the underpass; and that it did not seem to her that he slowed down.

The defendant testified that the Eddy Street underpass runs from Third to Fourth Street and is about 1,500 feet long; that proceeding north, a person cannot see the intersection of Fourth and Eddy Streets when starting down the underpass; that when arriving at the bottom of the underpass, or about 750 feet from Fourth Street, a person could see a car stopped at the intersection; and that when about 500 feet from Fourth Street a person can see the overhead traffic lights at Fourth and Eddy Streets. The defendant further testified that he had not had anything to drink before he left home on the day of the accident; that on the way to pick up the plaintiff he stopped and had one drink; that he did pick up the plaintiff and take her to the V. F. W. Club, arriving there about 9:30 p.m.; that he did not know how many drinks he had or how many drinks the plaintiff had, but the plaintiff probably had a drink every time he had one because he got her one when he got one for himself; that they left the V. F. W. Club at about 1:30 a.m.; that the two of them walked together, and he was not staggering; and that the plaintiff said nothing to him about the way he was acting and did not say that she thought he should not drive and that she would drive. The defendant described the route he took after leaving the V. F. W. Club, stating that he crossed Third Street at Eddy Street at 20 to 25 miles an hour; that as he went into the underpass he was in the inside lane nearest the centerline; that starting down the underpass he was unable to see anything until he got to the bottom of the underpass then he saw a car stopped at the stop sign; that he proceeded a little farther and saw that the light was red; that he proceeded up the hill and the light was about to change; and that when he looked down it was too late and he ran into the back end of the car ahead of him. The defendant further testified that he

did not think he would have to stop because he thought the light would change and he believed the vehicle ahead of him would pull out.

On cross-examination the defendant testified that as he was driving down into the underpass he was going at a speed of about 20 to 25 miles an hour; that he was familiar with the speed sign; that the speed limit was 20 miles an hour; and that it could be 15 miles an hour. The defendant further testified that he was driving in the inside lane going north out of the underpass; that there was no traffic coming from the east to the west; that "I didn't think I would have to stop; too late to turn out; trying to hit the brake"; that the traffic light was red when he was about 500 feet away and he thought the light would change any minute; and that "I was thinking he was going to pull out. I didn't have to stop."

The plaintiff attacks instruction No. 3 which has to do with the definition of a guest passenger under section 39-740, R. R. S. 1943, in that the court should have included the entire paragraph of such statute to enable the jury to have all the facts necessary to arrive at a proper conclusion.

The plaintiff's petition alleged that the plaintiff was a guest passenger in the defendant's car. The defendant's answer admitted that fact. Instruction No. 3 given by the trial court so informed the jury. We conclude that the plaintiff's contention is without merit.

The plaintiff attacks instruction No. 4 in that the instruction is so worded that any neglect at all would bar the plaintiff from recovering; and further, that the guest should warn the driver under certain conditions rather than the second paragraph of the instruction which definitely set out to the jury that if there was any anticipation of danger, the guest should warn the driver.

In Sautter v. Poss, 155 Neb. 62, 50 N. W. 2d 547, this court said: " 'The duty of a guest riding in an automo-

bile is to use care in keeping a lookout commensurate with that of an ordinarily prudent person under like circumstances. The guest is not required to use the same degree of care as devolves upon the driver. If the guest perceives danger, or if at certain times and places should anticipate danger, he should warn the driver. Ordinarily, the guest need not watch the road or advise the driver in the management of the car.' " Cases are cited.

In the case at bar, the plaintiff, on direct examination, testified that she noticed a car parked ahead when she was in the middle of the underpass; that she did not say anything to the defendant at that time; and that she was going to, but she was shocked and unable to talk, but she knew that something was going to happen. This testimony contains a clear indication that the plaintiff saw the car stopped ahead and knew something was going to happen. We conclude that the trial court did not commit prejudicial error in the giving of the above instruction.

The plaintiff attacks instruction No. 5. This instruction relates to the burden of proof upon the plaintiff to prove by a preponderance of the evidence the following propositions: That the defendant was under the influence of alcoholic liquor or was guilty of gross negligence in one or more of the particulars set out in the plaintiff's petition; that the defendant was under the influence of alcoholic liquor or the gross negligence of the defendant was the sole, proximate cause of the accident; and that the plaintiff was damaged by reason of defendant's gross negligence or his being under the influence of alcoholic liquor.

In this connection, the plaintiff asserts that the first three witnesses called by the plaintiff testified that the defendant was not under the influence of alcoholic liquor. The instruction submitted both possible grounds under the guest statute upon which the plaintiff could base a recovery. There is evidence that the defendant

was under the influence of intoxicating liquor. The evidence was conflicting in this respect. We conclude that there was no prejudicial error in the giving of this instruction.

The plaintiff attacks the trial court's instruction No. 6, which states in part: "If the accident which caused the injury, if any, to plaintiff was not caused by the gross negligence of the defendant or as a result of defendant being under the influence of alcoholic liquor, plaintiff would not be entitled to recover." We find no prejudicial error in the giving of this instruction.

The plaintiff attacks instruction No. 8. This instruction contains definitions such as "negligence," "contributory negligence," "gross negligence," and "proximate cause." The plaintiff's contention is that in this instruction the trial court failed to instruct the jury to find for the plaintiff that the accident was the proximate cause of the injuries to the plaintiff. In the light of all of the evidence we fail to find prejudicial error in the giving of this instruction.

The plaintiff complains that the trial court failed to properly instruct the jury upon all of the material issues presented by the pleadings and the evidence, and that the trial court failed to give any instructions on the speed or rules of the road and the requirement of the use of lights and signal lights. There is no allegation in the plaintiff's petition concerning the defendant's failure to have his vehicle properly lighted. There is no evidence in the record that the speed of the defendant's car was violative of any statute. There is no evidence of the speed of the defendant's car during the 750 feet of the underpass from the bottom to the place where the accident happened. And, there is no evidence that the defendant failed to decrease his speed as he traveled the last 750 feet of the underpass to the place where the accident happened. We find no prejudicial error as contended for by the plaintiff.

The plaintiff contends that the trial court erred in

giving instruction No. 12 on the assumption of risk, when the instruction did not include that the assumption of risk does not apply to unknown or hidden dangers.

In Landrum v. Roddy, 143 Neb. 934, 12 N. W. 2d 82, 149 A. L. R. 1041, this court said that guests who accept the hospitality of the driver of an automobile accept whatever risk attends the degree of proficiency of such driver and his usual and customary habits of driving with which they are familiar. See, also, Swengil v. Martin, 125 Neb. 745, 252 N. W. 207; McGrath v. Nugent, 133 Neb. 237, 274 N. W. 549. The court further said that one who knows, appreciates, and deliberately exposes himself to a danger assumes the risk thereof. One cannot deliberately incur an obvious risk of personal injury, especially when preventive measures are at hand, and then hold the author of the danger for the ensuing injury. See 38 Am. Jur., Negligence, § 171, p. 845. This court held in Landrum v. Roddy, *supra:* "The maxim 'volenti non fit injuria' means: If one, knowing and comprehending the danger, voluntarily exposes himself to it, though not negligent in so doing, he is deemed to have assumed the risk and is precluded from a recovery for an injury resulting therefrom. The maxim is predicated upon the theory of knowledge and appreciation of the danger and voluntary assent thereto. * * * Within the limits of its terms the maxim of 'volenti non fit injuria' is applicable to negligence actions in this jurisdiction. * * * In actions based on negligence the defense of assumption of risk under the maxim 'volenti non fit injuria' is not inconsistent with the defense of contributory negligence."

Under the facts as heretofore set forth we conclude that the trial court did not commit prejudicial error in giving an instruction on the assumption of risk.

The defendant moved for a directed verdict at the close of the plaintiff's case and at the close of all of the evidence. The facts are sufficient to warrant the court

in overruling the motions for directed verdict and taking the case to the jury.

With reference to the instructions, the rule is: "Instructions given to a jury must be construed together, and if when considered as a whole they properly state the law they are sufficient." Price v. King, 161 Neb. 123, 72 N. W. 2d 603.

"Instructions must be considered and construed together, and if they are not sufficiently specific in some respects, it is the duty of counsel to offer requests for instructions that will supply the omission and, unless that is done, the judgment will not ordinarily be reversed for such defects." Tate v. Borgman, 167 Neb. 299, 92 N. W. 2d 697. See, also, Coyle v. Stopak, 165 Neb. 594, 86 N. W. 2d 758.

From an examination of the entire record we conclude that the judgment of the trial court should be, and is hereby, affirmed.

AFFIRMED.