RAYMOND KAUFMAN, APPELLEE, v. GEORGE TRIPPLE, APPELLANT.

144 N. W. 2d 201

Filed July 15, 1966.   No. 36256.

594

Holtorf, Hansen & Kortum, for appellant.

W. H. Kirwin, for appellee.

Heard before CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and COLWELL, District Judge.

CARTER, J.

This is an action by Raymond Kaufman to recover damages for personal injuries suffered by him while riding as a guest in an automobile owned and operated by George Tripple. The jury returned a verdict for Kaufman against Tripple in the amount of $21,974.75. Tripple has appealed.

On May 31, 1962, Tripple was engaged in the wholesale distribution of beer and had been so engaged for 10 years. At 10 a.m. on said day, Kaufman was in George's Tavern in Gering when Tripple came in. Tripple told Kaufman he had to call on beer customers in Bayard and Bridgeport and asked Kaufman to ride along with him. Kaufman accepted the invitation on condition that they would be back between 5 and 6 o'clock p.m.

They left in Tripple's automobile traveling east on Highway No. 92, to Melbeta, where they stopped and visited with a customer for a few minutes. They then

continued on east to Highway No. 26, where they turned north into Bayard, the intersection of Highways Nos. 92 and 26 being the place of the accident in this case. They went to Reifschneider's Tavern where they had a beer and Tripple discussed his business. They then went to Schwartz' Tavern where, according to Kaufman, they had another beer and Tripple's business was transacted. They then went to lunch with one Walt Bretzer, who later accompanied them to Bridgeport. They went south on Highway No. 26 to Highway No. 92 and turned east to Bridgeport, where they remained for a couple of hours. They returned to Bayard over the same route they traveled going to Bridgeport and went to Reifschneider's Tavern where they had a beer or two. They went from there to Schwartz' Tavern where they remained until 11:15 p.m. Kaufman played pool while Tripple bought beer for customers. Kaufman testified that Tripple drank 8 or 9 bottles of beer and Tripple testified he bought but one. As they left, Kaufman asked Tripple if he was in condition to drive and Tripple assured him that he was. They got into the automobile, Tripple driving, and headed south on Highway No. 26. Kaufman leaned back and relaxed and was aroused when the car hit one of the islands at the intersection of Highways Nos. 26 and 92, the intersection which they had negotiated three previous times that day. The car careened across Highway No. 92, went into the ditch, and hit its south bank head-on. Kaufman was very seriously injured and Tripple suffered a broken arm and cuts. The automobile was being driven 40 to 45 miles per hour when the accident occurred. There was a warning of a stop sign ahead a half block north of the intersection and stop signs to the east and west entrances to Highway No. 92. There were wheel marks on the pavement caused by the braking of the car beginning 9 feet north of the point where the automobile struck the curb of the island. Tripple testified that he fell asleep at the wheel and that he applied the brakes

when the island was struck. Kaufman testified that he asked Tripple after they left Bayard if he felt able to drive and was again assured that he was all right. Tripple denies that this conversation took place.

The intersection where the accident occurred is located about 3 miles south of Bayard. Highway No. 92 is substantially an east and west road. Highway No. 26 intersects Highway No. 92 from the north, forming a T-intersection. An island in Highway No. 26 extends north approximately 200 feet from the north side of Highway No. 92. The usual turning lanes for leaving and entering from one highway to the other are provided. Tripple struck the curb of the island and traveled approximately 94 feet before running into the south ditch of Highway No. 92.

Tripple contends that the evidence is insufficient to sustain a finding of gross negligence under the guest statute and that the trial court erred in overruling his motions for a directed verdict and in submitting the issue to the jury. Under the evidence in the record the jury could properly find that Tripple had been drinking beer intermittently most of the afternoon and evening, and drank 8 or 9 bottles of beer from 5 p.m. to 11:15 p.m. The evidence shows that Tripple approached the intersection at 40 to 45 miles per hour and failed to observe or comply with the warning and stop signs protecting Highway No. 92. Tripple admits that he fell asleep and was aroused only when his automobile struck the curb of the island.

The patrolman who investigated the accident testified that in his opinion Tripple was under the influence of liquor at the time of the accident. From the evidence herein summarized, the jury could properly find that Tripple was under the influence of liquor when the accident occurred.

Section 39-740, R. R. S. 1943, provides in part: "The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in

such motor vehicle as a guest or by invitation and not for hire, unless such damage is caused by the driver of such motor vehicle being under the influence of intoxicating liquor or because of the gross negligence of the owner or operator in the operation of such motor vehicle."

The foregoing provision of the guest statute provides for two distinct grounds of recovery. One exists if the host driver is under the influence of intoxicating liquor in which event such driver is liable to a guest for ordinary negligence. The other exists only if the host is guilty of gross negligence. Tripple complains that the petition does not allege that Tripple was under the influence of intoxicating liquor within the meaning of the first ground of liability stated therein and that the trial court erred in submitting that issue to the jury. The issue was submitted by the court's instruction No. 5 in part as follows: "The burden of proof in this action is upon the plaintiff, and before plaintiff can recover, he must prove by a preponderance of the evidence all of the following propositions: (a) That the defendant was under the influence of alcoholic liquor or was guilty of gross negligence in one or more of the particulars set out in plaintiff's petition; (b) That the defendant being under the influence of alcoholic liquor or the gross negligence of the defendant was the sole, proximate cause of the accident; (c) That plaintiff was damaged by reason of defendant's gross negligence or his being under the influence of alcoholic liquor; (d) The amount of such damages."

The instruction was an exact copy of instruction No. 1 requested by Tripple. It is fundamental that a party may not tender an instruction to the court and then, after an adverse verdict, object to its submission to the jury by the court.

Tripple asserts, however, that motions for a directed verdict made at the close of plaintiff's evidence and at the close of all the evidence were erroneously denied. In Cunning v. Knott, 157 Neb. 170, 59 N. W. 2d 180, this

court said: "There is no contention here that defendant was driving under the influence of intoxicating liquor within the meaning of section 39-740, R. R. S. 1943. The evidence as to his drinking intoxicants, however, is a circumstance to be considered in determining whether defendant was guilty of gross negligence."

We think the evidence of Tripple's drinking throughout the day, the testimony of the patrolman that Tripple was intoxicated at the time of the accident, his admission that he fell asleep at the wheel, and his failure to comply with warning and stop signs is sufficient to warrant the submission of Tripple's gross negligence to the jury. Landrum v. Roddy, 143 Neb. 934, 12 N. W. 2d 82, 149 A. L. R. 1041; Cole v. Wentworth, 175 Neb. 325, 121 N. W. 2d 567; Hess v. Holdsworth, 176 Neb. 774, 127 N. W. 2d 487. Under the facts here disclosed, the trial court did not err in overruling the motions for a directed verdict.

Tripple asserts that the trial court erred in not holding that the contributory negligence of Kaufman was more than slight as a matter of law and entitled Tripple to a directed verdict. As to the issue of contributory negligence the record shows that Kaufman was in the company of Tripple from 10 a.m. to the time of the accident at approximately 11:30 p.m. Kaufman testified that Tripple drank a lot of beer and that he drank 8 or 9 bottles from 5 p.m. to 11:15 p.m. He asked Tripple before and after entering the car if he was in condition to drive the automobile, indicating that he had some doubt as to the effect of his drinking. He accepted Tripple's assurances that he was in proper condition to operate the automobile. He leaned back in the car and dozed until the happening of the accident. The evidence is in conflict as to the quantity of beer which Tripple drank. Tripple also denies that Kaufman inquired as to his condition after entering the car.

The duty of a guest riding in an automobile is to use care in keeping a lookout commensurate with that of an

ordinarily prudent person under like circumstances. If the guest perceives danger, or if he should reasonably anticipate danger, the duty evolves upon the guest to warn the driver. Ordinarily, the guest is not required to watch the road or advise the driver in the management of the automobile. Sautter v. Poss, 155 Neb. 62, 50 N. W. 2d 547. See, also, O'Brien v. Anderson, 177 Neb. 635, 130 N. W. 2d 560; Bresley v. O'Connor Inc., 163 Neb. 565, 80 N. W. 2d 711. It is not contributory negligence for a guest to sleep while riding in an automobile when he has no knowledge of negligent driving on the part of his host, or of impending danger on the highway. Scott v. Service Pipe Line Co., 159 Neb. 36, 65 N. W. 2d 219. If a guest knows, or ought to have known, that the host driver was under the influence of intoxicating liquor to such an extent as to create danger in riding with him, his voluntary exposure to such danger constitutes contributory negligence. Wisnieski v. Moeller, 165 Neb. 476, 86 N. W. 2d 52. Under the evidence in this case, contributory negligence, if any, was a question of fact for the jury and not one of law for the court. The trial court did not err in overruling the motion for a directed verdict on this point and in submitting the question of Kaufman's contributory negligence to the jury.

Tripple also contends that the evidence shows as a matter of law that Kaufman assumed the risk of injury under the facts in this record and that his motion for a directed verdict should have been sustained on that ground. The defense of assumption of risk is not inconsistent with the defense of contributory negligence. It is essential to the defense of contributory negligence that negligence of the plaintiff be a proximate cause or a proximately contributory cause of the injury while assumption of risk is a defense when one voluntarily exposes himself to injury, although it plays no part in causing the injury. It is here contended that, under the facts of this case, Kaufman knew or should have known that Tripple was not a safe driver when he en-

tered Tripple's automobile and that he therefore assumed the risk of injury as a matter of law. A fixed state of facts is not shown by the evidence and the conflicts appearing therein were for the jury. The trial court did not err in submitting the issue of assumption of risk to the jury. "The court further said that one who knows, appreciates, and deliberately exposes himself to a danger assumes the risks thereof. One cannot deliberately incur an obvious risk of personal injury, especially when preventive measures are at hand, and then hold the author of the danger for the ensuing injury." O'Brien v. Anderson, *supra*. Whether or not Kaufman assumed the risk of injury in the instant case is a question of fact. for the jury. The motion for a directed verdict on the ground that Kaufman assumed the risk as a matter of law was properly overruled. Whether or not the knowledge of a guest, that the host driver of an automobile has been drinking, will operate to prevent a recovery of damages in a particular case depends upon all the facts and circumstances of the case, and is usually a question for the jury. Landrum v. Roddy, *supra*.

It is contended that the verdict in the amount of $21,-974.75 is · excessive and that the trial court permitted evidence of loss of earning power over objection, which was inadmissible and prejudicial.

The evidence shows that Kaufman had been engaged in operating a tavern in Scottsbluff, which he had sold about 30 days previously. At the time of the accident he had no business but was looking for another business of the same type. About a year later he purchased another tavern and took his son into the business as a partner.

Kaufman suffered serious injury to his back, the medical evidence showing that he suffered great pain and suffering which will continue to some extent for the remainder of his life. He had a comminution of the right shoulder blade and four fractured ribs. He also suffered serious injury to his right arm and hand, including

the severance of the tendons controlling the middle and ring fingers. Hospital, medical, and other charges for treating his injuries amounted to $2,112.25. His life expectancy was shown to be about 20 years. Without detailing all the evidence, we conclude that the verdict of the jury was within the scope of the evidence and is not therefore excessive.

Tripple argues that incompetent evidence was admitted over objection which tended to increase the size of the verdict. The complaint is directed to evidence of loss of earning capacity, which was submitted to the jury. Loss of earnings was not submitted because Kaufman was not employed nor engaged in a gainful business at the time of the accident, and therefore lost no earnings. Kaufman was permitted to testify that the net earnings in his former business in Scottsbluff amounted to $1,000 to $1,500 per month. He was also permitted to testify that he and his son netted $18,000 in earnings the first 10 months of operation in the business he purchased a year after the accident. Objection was made that this evidence was immaterial, that such damages were not pleaded, that it was not a proper measure of damages, and no proper foundation was laid for the testimony.

In Jacobsen v. Poland, 163 Neb. 590, 80 N. W. 2d 891, this court quoted the following with approval from Germ v. City & County of San Francisco, 99 Cal. App. 2d 404, 222 P. 2d 122: "The earnings prior to the injury are admissible as evidence of the extent to which the earning capacity of the plaintiff has been impaired by the injury. * * * the best method of proof of pecuniary loss is testimony of the plaintiff as to his earnings for a number of years immediately prior to the accident. * * * There is no express limitation upon the time which this testimony may cover. The remoteness of the time affects the weight of the testimony and not its admissibility. The fact that the injured person was not employed at the time of the accident does not necessarily

deprive him of the right to compensation for the loss of his earning capacity."

The problem presented, however, relates itself more to a loss of profits rather than to a loss of earnings. A loss of earnings due to the negligence of another affords a proper basis of recovery. But a loss of profits from a business which may or may not be due to an impairment of earning capacity poses a different question. The law generally is unfavorable to the recovery of losses of profits in tort actions. But a recovery of profits does not rest on the fact that they are profits but because they are ordinarily speculative, contingent, or uncertain. Where it is shown that a loss of profits is the natural consequence of the tort, and their amount is shown with reasonable certainty, they are competent to show loss of earning power, although incompetent as a measure of damages. Each case in that respect must rest on its own facts.

Although Kaufman was not employed nor engaged in his trade as a tavern keeper, his trade was one that would suffer by his loss of earning capacity because of its personalized nature. Such loss cannot be measured by any known yardstick and it is usually a factual matter for the jury to determine. Kaufman suffered some loss of earning capacity due to his injury because of his impaired ability to lift heavy objects and his lack of dexterity in handling bottles, glasses, and the like. The profits he had previously made and what he made after the accident would support in a general way the extent of his loss of earning capacity. In his subsequently acquired business his profits were about $900 per month. But we cannot say as a matter of law under the facts of this case that the reduction of his profits was affected materially by his loss of earning capacity. It was for the jury to determine that question.

In Offensend v. Atlantic Refining Co., 322 Pa. 399, 185 A. 745, the court said: "The general rule is that profits derived from a business are not to be considered

as earnings and cannot be admitted as a measure of loss of earning power, but where they are almost entirely the direct result of personal management and endeavor, they are an accurate measure of earning capacity and admissible as such: * * *. Appellant's contention, that appellee was obliged to show by books, records, or accounts of some kind that the statement of net earnings was correct, cannot be sustained. Appellant was afforded a full opportunity to bring out on cross-examination the manner in which appellee arrived at his figures, and, failing to avail himself of this opportunity, he cannot now complain the estimate was not in fact accurate."

In Trujillo v. Wilson, 117 Colo. 430, 189 P. 2d 147, it is said: "Error is further urged in admission of evidence and instructing the jury as to damage through loss of income by R. J. Wilson who was permitted to testify as to cost of hired help and his operations and profit the preceding season in raising turkeys and the limit imposed on such operations as a result of the accident. Such evidence was admissible. Mountain States Co. v. Sanger, 87 Colo. 369, 287 Pac. 866, and cases annotated; 122 A. L. R. 307, et seq., and prior annotations there supplemented. While such evidence is not admitted as affording a measure of damages but only as an aid to the jury in estimating a fair and just compensation for being prevented by the injury from prosecuting such work, defendant cannot here complain for the reason that no objection was made to the instruction for failure to limit the purpose of the testimony and no proper instruction was tendered to that end."

In Osterode v. Almquist, 89 Cal. App. 2d 15, 200 P. 2d 169, the court said: "While a plaintiff in an action for personal injuries cannot ordinarily recover for loss of profits derived from a business * * *, however, under a plea of general damages and to prove loss of earning capacity, it is permissible to show what wages, salary, or emoluments would be open to the plaintiff in a busi-

ness, vocation, trade, or profession which he understands and in which he would have the right and ability to engage except for the injuries sustained, * * *, and the earning capacity of Ralph Osterode prior to the accident was a proper subject of inquiry."

"When it has been definitely proved that a loss of earnings or profits, or a decrease in earning capacity has resulted from an inability to exercise personal efforts or skill toward the production of income, and the amount of such loss has been established with reasonable certainty, the amount should be included in an award of damages in a motor vehicle case. But, when a claim for lost profits is interwoven with other factors, such as invested capital, industry, and skill of others, such lost profits may not be the subject of an award. Profits hoped to be derived in the future from a business are too remote and uncertain to be regarded as an element in estimating damages, but a decrease in income, arising from an inability to exercise personal efforts or special efficiency directly producing the income, is an element to be weighed. * * * The fact that an injured person was not engaged in a gainful occupation when injured does not bar recovery for impairment of his earning capacity, nor does fact he may not have been inclined to labor before sustaining injury. * * * Generally speaking, profits derived from a business are not to be considered as earnings and cannot be used as a measure of loss of earning power, but where profits are almost entirely the direct result of personal management and endeavor, they are an accurate measure of earning capacity." 10 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. Ed.), § 6465, p. 63.

We find no error in the admission of the evidence as to the loss of earnings and profits under the facts in the instant case.

The judgment of the district court is free from prejudicial error and it is affirmed.

AFFIRMED.