LOUIS S. CIRCO, APPELLEE, v. MARILYN M. SISSON, APPELLANT.

229 N. W. 2d 50

Filed May 8, 1975. No. 39724.

Robert D. Mullin of Boland, Mullin & Walsh, for appellant.

Emil F. Sodoro, David A. Johnson, and Ronald H. Stave, for appellee.

Heard before WHITE, C. J., McCOWN, NEWTON, and CLINTON, JJ., and Kelly, District Judge.

KELLY, District Judge.

This is an action by Louis S. Circo to recover damages for personal injuries suffered by him while riding as a guest in an automobile operated by Marilyn M. Sisson. The jury returned a verdict for Circo and against Sisson in the amount of $50,000.

On September 12, 1970, the plaintiff and two companions traveled from Omaha to Lincoln to attend the Nebraska-Wake Forest football game. The three gathered at a bar owned by the plaintiff at approximately 10:30 a.m. Some alcoholic beverages were consumed and additional alcoholic refreshments were taken with the three men. They proceeded to Lincoln, Nebraska, in an automobile owned by one of the three, Harold R. Blankenship. Upon arriving at Lincoln, the three then proceeded to an establishment known as Barry's Bar, whereupon all three consumed additional alcoholic liquor. While at Barry's Bar they encountered two ladies known to them.

The five persons then proceeded to Memorial Stadium where they viewed the football game. The plaintiff and Mr. Blankenship took a pint of whiskey with them, which was consumed by them prior to the ending of the first half of the football game. At half time, Mr. Blankenship left the company of the other persons and did not return.

After the game, Mr. Circo, his other companion, Mr. Johnson, the defendant, Mrs. Sisson, and her female companion, Miss Finnigan, returned to Barry's Bar where further alcoholic beverages were consumed by all. At about 5:30 p.m. to about 5:45 p.m., a uniformed Lincoln police officer, now Sergeant VanButsel, appeared at Barry's Bar inquiring as to the identity of Mr. Circo. The police officer notified Mr. Circo and the defendant, Mrs. Sisson, that their friend, Mr. Blankenship, was being detained at the Lincoln police station, where he had been since half time of the football game. The officer further stated that in his opinion Mr. Blankenship was intoxicated and would not be able to drive the people back to Omaha, whereupon Mr. Circo, Mrs. Sisson, and Sergeant VanButsel, went to the Lincoln police station and met with Mr. Blankenship and Captain Lightner. Sergeant VanButsel and Captain Lightner informed the parties that Mr. Blankenship could be released to them;

however, it was their opinion that neither Mr. Circo nor Mr. Blankenship should operate a motor vehicle. The two police officers observed the defendant and were of the opinion that she was not under the influence of alcoholic liquor and could drive the vehicle if she would. This the defendant agreed to do, and the police officers handed her the keys to Mr. Blankenship's automobile.

Sergeant VanButsel then returned the plaintiff, the defendant, and Mr. Blankenship to Barry's Bar in the police cruiser. Mrs. Sisson reentered Barry's Bar to inform her friend, Miss Finnigan, and Mr. Johnson, that she was going to return the plaintiff and Mr. Blankenship to Omaha. The police officer then explained the one-way streets of Lincoln to the defendant and followed the defendant as she proceeded west on Q Street to Eighth Street, south on Eighth Street to P Street, east on P Street to Tenth Street, and north on Tenth Street, a one-way street which led to the ramp of Interstate 180. The defendant and the two gentlemen then proceeded back to Barry's Bar, rather than leaving for Omaha. The three reentered Barry's Bar where they remained for from 1 to 1½ hours. The defendant denied that she consumed any further alcoholic beverages. At approximately 7:30 p.m., the plaintiff and the defendant returned to Mr. Blankenship's car, which was parked on the north side of Q Street, and proceeded to Omaha. The plaintiff and the defendant both testified that the plaintiff immediately went to sleep upon entering Mr. Blankenship's automobile. The defendant then drove the vehicle west to Eighth Street, south to P Street, east to Ninth Street, and north on Ninth Street, which is a one-way street heading south. Plaintiff then entered Interstate 180 going north in the south-bound lanes. Approximately 1.1 miles from the entry onto the ramp, defendant's vehicle had a head-on collision with a vehicle traveling south. The plaintiff suffered serious and extensive personal injuries and was unconscious for near-

ly 1 week thereafter. The plaintiff has no recollection of any events subsequent to entering the vehicle operated by the defendant.

Plaintiff brought suit in the District Court for Douglas County, Nebraska, alleging the proximate cause of his injuries to be the negligence of the defendant; the gross negligence of the defendant; and the operation of the motor vehicle by the defendant when she was operating the automobile while being under the influence of intoxicating liquor.

The defendant in her amended answer admitted the happening of the accident, admitted operating the vehicle in the wrong direction on Interstate 180, and admitted the injuries suffered by the plaintiff as a result of the accident. The defendant further admitted consuming intoxicating liquor over a period of several hours preceding said accident, that a test of her blood showed an alcohol content of 0.17 alcohol, and admitted having entered a plea of guilty to operating a motor vehicle under the influence of intoxicating liquor. Defendant further alleged that the proximate cause of the accident and plaintiff's resulting injuries and damages was the contributory negligence of the plaintiff in exposing himself to the danger of riding with the defendant when the plaintiff knew, or should have known, that the defendant had been consuming intoxicating liquor over a long period of time prior to the time that plaintiff elected to ride with the defendant and knew, or should have known, that defendant's ability to drive was thereby impaired. The defendant further alleged that the plaintiff voluntarily and consciously elected to ride with the defendant, thereby invoking the doctrine of assumption of risk.

The case was tried upon the issues as outlined above; submitted to a jury; and the jury returned a verdict of $50,000 damages in favor of the plaintiff against the defendant.

The case at bar has a great many similarities to the

case of Kaufman v. Tripple, 180 Neb. 593, 144 N. W. 2d 201, decided by this court in 1966. In the Kaufman case, the defendant, a wholesale beer distributor, had taken the plaintiff on a business trip, whereby the purpose was to promote the business of the defendant. The parties were together from approximately 10 a.m. until 11:30 p.m. During this period of time they had visited several taverns in smaller towns near Scottsbluff. The plaintiff in that case admitted to consuming some eight to nine bottles of beer between 5 p.m. and 11:15 p.m. While driving on Highway No. 92 and returning to Scottsbluff, the defendant fell asleep; left the roadway and wrecked the automobile operated by him. The plaintiff had made inquiry prior to getting into the vehicle as to the condition and ability of the defendant to operate his motor vehicle. After being assured by the defendant that he was of sufficient ability to operate the vehicle, the plaintiff then rode with him and went to sleep prior to the accident. The plaintiff had been with the defendant during all times of the defendant's consuming of alcoholic beverages.

In the Kaufman case our court held as follows: "The duty of a guest riding in an automobile is to use care in keeping a lookout commensurate with that of an ordinarily prudent person under like circumstances. If the guest perceives danger, or if he should reasonably anticipate danger, the duty evolves upon the guest to warn the driver. Ordinarily, the guest is not required to watch the road or advise the driver in the management of the automobile. Sautter v. Poss, 155 Neb. 62, 50 N. W. 2d 547. See, also, O'Brien v. Anderson, 177 Neb. 635, 130 N. W. 2d 560; Bresley v. O'Connor Inc., 163 Neb. 565, 80 N. W. 2d 711. It is not contributory negligence for a guest to sleep while riding in an automobile when he has no knowledge of negligent driving on the part of his host, or of impending danger on the highway. Scott v. Service Pipe Line Co., 159 Neb. 36, 65 N. W. 2d 219. If a guest knows, or ought to have known, that

the host driver was under the influence of intoxicating liquor to such an extent as to create danger in riding with him, his voluntary exposure to such danger constitutes contributory negligence. Wisnieski v. Moeller, 165 Neb. 476, 86 N. W. 2d 52. Under the evidence in this case, contributory negligence, if any, was a question of fact for the jury and not one of law for the court. The trial court did not err in overruling the motion for a directed verdict on this point and in submitting the question of Kaufman's contributory negligence to the jury.

"Tripple also contends that the evidence shows as a matter of law that Kaufman assumed the risk of injury under the facts in this record and that his motion for a directed verdict should have been sustained on that ground. The defense of assumption of risk is not inconsistent with the defense of contributory negligence. It is essential to the defense of contributory negligence that negligence of the plaintiff be a proximate cause or a proximately contributory cause of the injury while assumption of risk is a defense when one voluntarily exposes himself to injury, although it plays no part in causing the injury. It is here contended that, under the facts of this case, Kaufman knew or should have known that Tripple was not a safe driver when he entered Tripple's automobile and that he therefore assumed the risk of injury as a matter of law. A fixed state of facts is not shown by the evidence and the conflicts appearing therein were for the jury. The trial court did not err in submitting the issue of assumption of risk to the jury. 'The court further said that one who knows, appreciates, and deliberately exposes himself to a danger assumes the risks thereof. One cannot deliberately incur an obvious risk of personal injury, especially when preventative measures are at hand, and then hold the author of the danger for the ensuing injury.' * * * The motion for a directed verdict on the ground that Kaufman assumed the risk as a matter of law was properly over-

ruled. Whether or not the knowledge of a guest, that the host driver of an automobile has been drinking, will operate to prevent recovery of damages in a particular case depends upon all the facts and circumstances of the case, and is usually a question for the jury. Landrum v. Roddy, supra."

Our court stated in 1943, in the case of Landrum v. Roddy, 143 Neb. 934, 12 N. W. 2d 82: "The maxim 'volenti non fit injuria' means: If one, knowing and comprehending the danger, voluntarily exposes himself to it, though not negligent in so doing, he is deemed to have assumed the risk and is precluded from a recovery for an injury resulting therefrom. The maxim is predicated upon the theory of knowledge and appreciation of the danger and voluntary assent thereto.

"Within the limits of its terms the maxim of 'volenti non fit injuria' is applicable to negligence actions in this jurisdiction.

"In actions based on negligence the defense of assumption of risk under the maxim 'volenti non fit injuria' is not inconsistent with the defense of contributory negligence.

"Under the facts of this case the question of whether or not the conduct of the appellee is such as to defeat any right to recover, to which she may be entitled, is one of contributory negligence and should be submitted to the jury."

In the present case the testimony of the police officers viewing the defendant, 1 to 1½ hours prior to the accident, was to the effect that the defendant did not appear to be under the influence of alcoholic liquors and was capable of operating a motor vehicle.

The further testimony of witnesses who observed the defendant during the 1 to 1½ hours that the defendant returned to Barry's Bar, was to the effect that she did not appear to be under the influence of intoxicating liquor and that these witnesses did not observe her con-

sume additional alcoholic beverages upon her return to Barry's Bar from the police station.

The testimony of the defendant was that she had consumed approximately three drinks in Barry's Bar prior to going to the football game and three to four drinks after the football game and prior to going to the police station, and no alcoholic beverages after having been to the police station.

Although the blood test of the defendant taken subsequent to the accident, together with the plea of guilty to the charge of operating a motor vehicle while under the influence of alcoholic liquor, would indicate that the defendant was under the influence of intoxicating liquor, the question is: Could reasonable minds differ as to whether or not the plaintiff, as a matter of law, knew, or should have known, the defendant was intoxicated to the degree that reasonable minds could not differ in determining that the defendant was too intoxicated to drive a motor vehicle.

The testimony of the police officers, and their delivery of the keys to the motor vehicle to the defendant would indicate that persons, who are somewhat expert in judging the impairment of a motor vehicle operator, were of the opinion that she could operate the vehicle. The testimony of the other witnesses indicated that in their opinion the defendant was capable of operating a motor vehicle immediately prior to the accident.

In addition to the above-described testimony, it is noteworthy that no witness, at any time, testified that the defendant staggered when she walked, slurred her speech, or showed any outward symptoms of being intoxicated.

It appears obvious that this question then becomes a question for the jury to determine. The jury was properly instructed upon the defenses raised by the defendant, to wit: Contributory negligence, by instruction No. 7, and assumption of risk, by instruction No. 8.

Since this was a question for the jury to determine,

and the jury was properly instructed by the court, the jury's finding on behalf of the plaintiff amounted to a determination of the facts.

The plaintiff has attempted to raise the question of the constitutionality of the guest statute, section 39-6,191, R. R. S. 1943. The question has recently been settled in the case of Botsch v. Reisdorff, *ante* p. 165, 226 N. W. 2d 121.

The judgment of the District Court is affirmed.

AFFIRMED.