HARVEY R. WOOLEY, PERSONAL REPRESENTATIVE OF THE ESTATE OF TY MARTIN WOOLEY, APPELLANT, V. JANET KITTLE, APPELLEE.

309 N.W.2d 805

Filed August 21, 1981.   No. 43448.

Schneider & Nisley, P.C., for appellant.

Kay & Kay for appellee.

Heard before BOSLAUGH, CLINTON, and BRODKEY, JJ., and REAGAN and NORTON, District Judges.

NORTON, District Judge.

This is an appeal from a jury verdict and the over-ruling of appellant's motion for judgment notwith-standing verdict or in the alternative for a new trial. We affirm.

The original action was for wrongful death, brought by Harvey R. Wooley, personal representative of the estate of Ty Martin Wooley, deceásed, hereinafter referred to as Wooley, against one Janet Kittle, here-inafter referred to as Kittle. The jury returned a general verdict in favor of Kittle. In his appeal Wooley assigns seven errors. For the purposes of this decision we will consider only whether the trial court erred in giving certain instructions to the jury.

Ty Martin Wooley, six-year-old child of Harvey R. and Coralotta Wooley, died as the result of injuries received on October 15, 1978. There is no question that the injuries were the result of an accident involving a 1972 Caprice automobile, owned and operated by Kittle at that time.

Wooley, his wife, a daughter, and the decedent lived in a residence located in Key Estates Mobile Home Park at North Platte, Nebraska, at the time of the accident. The park consisted of 235 lots with approxi-mately 600 people living therein, about half of whom were children. There were no sidewalks adjacent to the lots, nor were there any hard-surfaced play areas or playground equipment. There were two dirt play areas. Evidence indicated that children played in the streets, which were hard-surfaced, and that pedes-trians used the streets to move from one area to another.

The Wooley home was located on a cul-de-sac to-

gether with other homes, including that of Kittle and her family. There were four lots on each side of the cul-de-sac. The cul-de-sac was a dead-end street, running south from an east-west street. The Wooley home was located on the east side of the cul-de-sac, and the Kittle home on the west side. Immediately adjacent to the street in front of the Kittle home was a hard-surfaced parking slab 20 feet in depth and 17 feet 9½ inches in width, with space sufficient to park three automobiles. This parking slab was located approximately 13 feet directly east of the Kittle home. Running generally northwest from the northwest corner of the parking slab was a sidewalk approximately 38 feet in length, ending at the front porch of the Kittle home, which porch was located on the northeast corner of the house. The house itself generally ran from north to south, with the front facing to the east.

On the day of the accident Kittle and her husband left their home shortly after lunch to attend a Girl Scout pinning ceremony. They took with them their three children and two other girls. At that time they were riding in the 1972 Caprice automobile, which had been purchased the day before the accident. Kittle's husband was driving. The ceremony lasted about 1½ hours, after which they returned to their home. The Caprice automobile was at that time parked in the middle of the parking slab facing west. Parked immediately north of the Caprice and on the north part of the slab was a Datsun station wagon belonging to Kittle's husband. The Kittle family went into their home. Shortly thereafter, Kittle realized that she had to purchase a present for her older son to take to a birthday party. Together with that son she left the home and walked to the Caprice. She noted a child by the name of John Mashek standing in the front yard of his home, which was located directly across the street from her home. She saw no other children either in the street or near to it. She entered the Caprice

from the left side and her son entered from the right side. After adjusting the seat to compensate for the size difference between her husband and herself she started the engine of the automobile. At that time her daughter came out of the house and stood in front of the Caprice. A conversation ensued, and Kittle stuck her head out of the left side window to talk with her daughter. She then looked in the outside rearview mirror and did not see anything. She stated that she looked both to the north and south. She then adjusted the inside rearview mirror and could still see John Mashek standing in his yard. Kittle then turned to her son and said, "Well, how many bicycles or something do we have to move now?" The question was based on the fact that bicycles and other items would be left upon occasion in the street. Kittle and her son both turned and looked out of the rear window of the Caprice. The only thing visible was John Mashek, who was standing in his yard and looking at Kittle. Kittle remained in a turned around position and proceeded to back the automobile. After going a short distance into the street she felt a bump, caused by something under the car. There was no apparent audible sound. She stopped the automobile, changed gears, and then pulled forward. She could not recall a bump when she drove forward. She thought she had run over a toy.

Kittle then exited the automobile and walked to the rear, at which time she discovered Ty Martin Wooley lying in the street with his feet toward the north and his head toward the south. He had obvious injuries. Beneath him was a skateboard. Evidence in the record indicates that children had been observed riding skateboards on their stomachs prior to the day of the accident. The child never recovered consciousness, and died shortly thereafter.

Two of the assignments of error deal with instruction Nos. 9 and 15 which were given by the trial court. Instruction No. 9 was an instruction requested by

Wooley and appears in the following language: "One of the issues in this case is whether the accident was caused by the conduct of Ty Martin Wooley. If you find the sole proximate cause of the accident was the conduct of Ty M. Wooley, then your verdict should be for the defendant. However, if the plaintiff has proved by a preponderance of the evidence, that some negligence of the defendant as set forth in Instruction No. 2 was the proximate cause or a proximately contributing cause of the accident, then the conduct of Ty M. Wooley could not have been the sole proximate cause thereof, then your verdict on the issue of negligence should be for the plaintiff." Instruction No. 15 was an instruction running to the question of contributory negligence on the part of the decedent's mother, in the following language: "If a mother fails to exercise reasonable care over her child to prevent him from getting out onto a roadway and, as a consequence of the failure, the child did get on the roadway and is killed, the mother's failure to exercise due care constitutes contributory negligence." Both of these instructions were included in the set of proposed instructions given to counsel for the parties prior to submission of the case, and were approved without exception by counsel for Wooley.

Wooley's argument in support of his contention that the giving of instruction No. 9 was error on the part of the trial court actually becomes twofold in its thrust. In essence, he says that this instruction should not have been given in view of the fact that the amended answer of Kittle alleges that the death of the decedent was "proximately caused and contributed to by the negligence of the plaintiff's decedent . . . ." Thus, says Wooley, the manner in which Kittle has framed this defense becomes in actuality a judicial admission by Kittle that the actions of the decedent were not the sole proximate cause of the accident but, if anything, were only contributing; that inasmuch as a child of tender years, such as the decedent, is incapable of

contributory negligence as a matter of law, the giving of instruction No. 9 permitted the jury to speculate on the issue of sole proximate cause, which issue had been removed by Kittle's admission; and that this error resulted in an unconscionable verdict.

This argument is not well taken. The language used in the amended answer by Kittle, while not stated in the words "sole proximate cause," does not say what Wooley claims. To imply that the phrase "proximately caused" should be so narrowly construed within the context in which it is used would simply frustrate the purpose of the law. Of greater importance, however, is the fact that instruction No. 9 was initially requested by Wooley. It is to be presumed that he was as familiar with the pleadings when the instruction was tendered as he is in this appeal. A party may not tender an instruction to the court and then, after an adverse verdict, object to its submission to the jury. *Kaufman v. Tripple*, 180 Neb. 593, 144 N.W.2d 201 (1966).

The other part of the problem with instruction No. 9 is, in reality, an implication which arises when it is read in connection with other instructions submitted to the jury. Is there a possibility that the giving of this instruction, coupled with certain others, might have tended to raise in the minds of the jury a right to speculate on the contributory negligence of the decedent and his mother acting together, leading to a conclusion that this total negligence was sufficient to defeat Wooley's claim? However, it is noted that prior to trial Wooley moved in limine to restrict evidence of contributory negligence on the part of the decedent, which motion was sustained by the trial court. Also, a reading of the instructions in total, and particularly No. 8, indicates that the trial court sufficiently cautioned the jury on the fact that a child of tender years is incapable of contributory negligence. It is fundamental that in the absence of any evidence of misconduct by counsel in arguing the case, or a showing to the contrary, it is to be presumed that the jury

followed the instructions given by the court. There is no evidence of either in this case.

On the basis of the foregoing, one is led to the inescapable conclusion that there is no merit to Wooley's argument that the giving of instruction No. 9 was error on the part of the trial court.

Wooley also objects to the giving of instruction No. 15, arguing that there was insufficient evidence to support this instruction. Once again, it is to be noted that his counsel did not object to this instruction at the conference on instructions held after the reception of evidence and when the parties had rested. Failure to object to instructions after they are submitted to counsel for review precludes raising objections to said instructions on appeal. *Flinn Paving Co., Inc. v. Sanitary & Improvement Dist. No. 227*, 198 Neb. 542, 254 N.W.2d 78 (1977).

A review of the evidence received at the time of trial discloses that the mother of the child had lived in the Key Estates Mobile Home Park, at the same location, for approximately 4 months preceding the accident of October 15, 1978. There is nothing to indicate that she was confined to the limits of her home, and in fact there is evidence that she participated in family activities which took her out and about the park. One could therefore logically assume that she was familiar with the general physical nature and construction of the area and the lack of playground facilities for the use of children. On the day in question, and at the time of the accident, she was inside her home "working around the house." She acknowledged that she was responsible for two children at that time. She knew her son was outside "at the Mashek place playing with John." She stated that she "could see him from the window." However, she did not see the accident. It would appear that there was sufficient evidence presented to justify the giving of instruction No. 15.

There being no error on the part of the trial court in the giving of these two instructions, the verdict

of the jury and the judgment of the trial court in overruling the motion for judgment notwithstanding verdict or a new trial are affirmed.

AFFIRMED.