CAROLYN J. SANDBERG, ADMINISTRATRIX OF THE
ESTATE OF DEAN M. SANDBERG, DECEASED, APPELLANT, V.
JOAN HELEN HOOGENSEN, EXECUTRIX OF THE ESTATE OF
DEVERN HOOGENSEN, DECEASED, APPELLEE.

266 N. W. 2d 745

Filed June 14, 1978. No. 41570.

Warren C. Schrempp and Thomas G. McQuade of Schrempp & McQuade, for appellant.

Erickson, Sederstrom, Johnson & Fortune, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, MCCOWN, CLINTON, BRODKEY, and WHITE, JJ.

SPENCER, J.

Plaintiff, administratrix in this wrongful death action, appeals from a jury verdict for the defendant

executrix. Plaintiff alleges error in the submission of an instruction on assumption of risk, in the giving of instructions Nos. 8 and 11, and in admitting evidence concerning the blood alcohol content of plaintiff's decedent. We affirm.

Plaintiff's decedent, Dean M. Sandberg, was killed on August 14, 1973, while riding as a guest passenger in an automobile operated by defendant's decedent, DeVern Hoogensen. Hoogensen died in the same accident, a one-car collision which occurred at 156th Street and West Dodge Road in Douglas County, at approximately 2 o'clock in the morning. The two men, who were close friends, had been drinking together for several hours before the accident. The evidence indicates it was customary for them to frequent two bars once or twice a week.

At the time of the accident the car was traveling westbound on West Dodge Road. Measurements taken at the accident scene showed the vehicle left 291 feet of skid marks before leaving the west side of 156th Street and crossing a ditch. The car traveled approximately 37 feet through the air. It continued for an additional 80 or 90 feet, knocking over a billboard and finally coming to rest on its top. Plaintiff's expert in accident reconstruction testified the car would have been traveling between 95 and 105 miles per hour before the brakes were applied. He placed the speed at the time the vehicle left the west edge of 156th Street at 69 miles per hour. Defendant's expert testified the vehicle would have been traveling at 45 miles per hour before crossing the ditch. If all the brakes were working properly, the initial speed of the vehicle would have been between 82 and 96 miles per hour. If only two of the wheels locked (an assumption based on the fact only two sets of skid marks were reported), the initial speed would have been between 66 and 75 miles per hour.

An autopsy was ordered on both of the men and tests were conducted for alcohol content. The testi-

mony indicated the blood alcohol content of Hoogensen, which was taken 4 hours after the accident, was 0.217 percent. The physician who analyzed the blood sample testified Hoogensen would have been "markedly" intoxicated, and his ability to operate a motor vehicle would have been "impaired considerably." Over objection, he was also permitted to testify that the blood alcohol content of Sandberg was 0.248 percent and the alcohol content of his urine was 0.35 percent. He testified Sandberg would also have been "markedly" intoxicated and his appreciation of risk would have been impaired.

The men met at 5:30 p.m. on August 13, 1973, at the Vagabond Lounge located at 5818 Ames Avenue in Omaha. They remained at the bar until 9 p.m. The owner of the establishment testified Sandberg had "maybe five, six to eight or so" drinks, and Hoogensen drank "probably six to eight, or nine." He described both men as being mildly intoxicated. They apparently left the Vagabond Lounge in separate vehicles.

The men met later at the Chalet Lounge, 108th and Center Streets. The owner testified both men arrived at approximately 9 p.m. and were still there when he left at midnight. He thought both men were "probably intoxicated." They were not stumbling or falling down, but they were intoxicated.

Mrs. Hoogensen arrived at the Chalet Lounge at about 11 p.m. She testified she had three or four drinks with her husband. She stated Mr. Sandberg did not arrive at the bar until 15 or 20 minutes after she had been there. Both men appeared intoxicated. She left at 12:15 a.m. when her daughter Andrea came into the bar. Andrea testified she had also come into the bar at 10 p.m. and visited with her father.

Debra Burkholder testified she was at the Chalet Lounge on that evening with four other girls, including another of Hoogensen's daughters. They

arrived about 8 or 8:30 p.m., and Hoogensen and Sandberg came in at about the same time. The men were still there when the girls left at about 12:30 a.m. Both men had 8 to 10 drinks. The girls were concerned about the men driving, but they refused to leave with them. Hoogensen's daughter tried to get her father to come over to the Burkholder home for coffee but he refused. He said he wanted to stay out and have a good time. Debra next saw the men out in front of her house located in the 1900 block on South 93rd Street. Something had been dragging under the car, and they had gotten out of the vehicle. She thought the men were singing. They threw some articles in the street and drove off.

Al Hoag was also drinking with the two men at the Chalet Lounge from 11 or 11:30 p.m. until the bar closed at 1 a.m. He believed they each had about six drinks during that time. The three men left the bar together, intending to go to a party. Hoag decided to follow in his own car to insure he would have a means of getting home. After a few blocks, the muffler on the Hoogensen car began dragging on the street and they stopped to fix it. Hoag got lost while following the Hoogensen automobile, and he was unable to locate the two men.

Daniel Peters, a neighbor of Mrs. Burkholder, testified two cars stopped in front of his house between 12 and 3 a.m. After turning on his spotlight he observed "three people outside the car in varying positions. One under the car, one leaning inside the car. * * * They were quite noisy." After wrestling with the pipe, they left it in the street. After they left, Mr. Peters found the pipe and some papers left there, which papers were made out to "Hoogie." He described the actions of the men as "noisy, loud, boisterous, not at all quiet."

The trial judge determined as a matter of law defendant's decedent was grossly negligent in the operation of his automobile. Over plaintiff's objections,

the jury was instructed on the defenses of contributory negligence and assumption of risk.

Plaintiff states she objected "vehemently" and now complains "bitterly" of the introduction into evidence by the trial court of a blood test taken of her decedent, who was the passenger in the car. She argues this evidence was irrelevant, or, if relevant, it should have been excluded as unfairly prejudicial or as tending to mislead or confuse the jury.

This issue was considered by the Virginia Supreme Court in Major v. Hoppe, 209 Va. 193, 163 S. E. 2d 164 (1968). It was there determined such evidence is relevant to the question of contributory negligence by the guest passenger. The doctor testified the passenger's body contained 0.16 percent of ethyl alcohol by weight, and that this blood alcohol level would impair the ordinary individual's judgment and motor activity. The Virginia court held it could be considered on the issue of contributory negligence. The fact that the passenger's ability to use due care for her own safety may have been influenced by the voluntary consumption of alcohol was held not to excuse her from its consequences. The court held the testimony tended to show the degree of the passenger's ability to assess the danger if she observed it, and her ability to give timely warning if there was an opportunity to do so, and was admissible for that purpose.

In Downing v. Marlia, 82 Nev. 294, 417 P. 2d 150 (1966), the plaintiff and the defendant met in a bar and drank for 6 hours. Evidence was introduced that the blood alcohol content of plaintiff, the guest passenger, was .206 percent 2 hours after the accident. The Nevada court stated: "We find no error in the introduction into evidence of plaintiff's blood alcohol content. It was relevant to the defense contention that plaintiff was jointly drinking with defendant, and therefore had actual knowledge of the latter's intoxication and so assumed the risk."

Rone v. Miller, 257 Ark. 791, 520 S. W. 2d 268 (1975), involved a wrongful death action in which both the driver and the guest passenger were killed. The defendant appealed from a judgment in favor of the plaintiff, contending the trial court erred in refusing to admit evidence concerning the intoxication of plaintiff's decedent. Defendant made an offer of proof that a witness would testify he observed plaintiff's decedent drinking, and that blood tests showed an alcohol content of 0.15 percent. The Arkansas court held exclusion of this evidence was erroneous.

This court has held that the percentage of alcohol content of body fluids is relevant in a civil case when accompanied by expert opinion evidence of the effect thereof. Raskey v. Hulewicz, 185 Neb. 608, 177 N. W. 2d 744 (1970). Here, the medical examiner who conducted the test expressed the opinion that plaintiff's decedent was markedly intoxicated and that his appreciation of a risk would be impaired.

The coroner, who was called by County Hospital at 3 a.m., on August 14, 1973, called a medical examiner 4 hours later to do an autopsy. He instructed the medical examiner to do a blood and alcohol screen also. At that time he did not know which of the decedents was the driver of the car.

Section 23-1820, R. R. S. 1943, provides, so far as material herein: "In each county there is hereby created the office of coroner's physician, who shall be appointed by the coroner of said county * * *. Such physician shall certify the cause of death in every case of death in such county not certified by an attending physician and shall perform or cause to be performed an autopsy when requested by the coroner."

The result of the blood test of the passenger was relevant to prove his intoxication. Intoxication would diminish his appreciation of danger and render him more likely to take greater risks than usual.

The tests were made at the direction of the coroner, pursuant to law.

Plaintiff, in her original brief, argues that an instruction on assumption of risk should be given only where there is evidence in the record that shows a complaining party knew of and comprehended the danger and voluntarily exposed himself to it. Blum v. Brichacek, 191 Neb. 457, 215 N. W. 2d 888 (1974). The point she is raising is that the record must affirmatively show that plaintiff's decedent actually knew of the danger in order to be bound by assumption of risk. In other words, it is her contention the record must show her decedent knew that Hoogensen was too drunk to drive when they left the tavern.

This court has held on several occasions that a guest may be guilty of contributory negligence or assumption of risk by riding or continuing to ride with a driver who he knows, or in the exercise of ordinary care and diligence, should know, is so intoxicated that he is unable to operate the vehicle with proper prudence or skill. Schaffer v. Bolz, 181 Neb. 509, 149 N. W. 2d 334 (1967); Raskey v. Hulewicz, 185 Neb. 608, 177 N. W. 2d 744 (1970).

In her reply brief, plaintiff calls our attention to several states with comparative negligence statutes which have abolished assumption of risk as a separate defense, and included it only as a facet of contributory negligence. She then revisits Landrum v. Roddy, 143 Neb. 934, 12 N. W. 2d 82 (1943), where this court held in actions based on negligence the defense of assumption of risk under the maxim "volenti non fit injuria" (he who consents cannot receive any injury) is not inconsistent with the defense of contributory negligence.

The opinion in Landrum v. Roddy, *supra*, contains an extensive discussion on assumption of risk, contributory negligence, the automobile guest statute, and the comparative negligence statute. Three

questions were raised concerning the doctrine of assumption of risk: "First, is the principle of the assumption of risk available in a tort action based on negligence? Second, if available, is it consistent with the defense of contributory negligence? Third, if consistent with contributory negligence, do the facts here present a question of contributory negligence, assumption of risk, or both?" The first two questions were answered in the affirmative.

On the first·question the court stated: "From a survey of the many cases on the subject it now seems well established that one who voluntarily assumed the risk of injury from a known danger is barred from a recovery in a negligence case within the maxim of 'volenti non fit injuria.' * * * This principle operates in a rather strictly limited field. A person in entering upon an undertaking, may be fully aware of the danger and may use all the care that it is possible to use; in fact, the very danger involved may make him more careful than usual. Certainly in such a case it cannot be said that he is guilty of contributory negligence. However, there is a question involved of whether or not he has voluntarily assumed the risk of the danger. Since the application of the maxim is extending beyond contractual relations the doctrine of assumption of risk, its application must be strictly limited to the terms thereof. Within the limits of its terms the maxim of 'volenti non fit injuria' is applicable to negligence actions in this jurisdiction."

The court answered the second question by stating: "Assumption of risk under the maxim 'volenti non fit injuria' involves a choice made more or less deliberately and negatives liability without reference to the fact that the plaintiff may have acted with due care, whereas, the defense of contributory negligence implies the failure of the plaintiff to exercise due care. It may be said that contributory negligence involves the notion of some fault or breach of

duty on the part of the one charged therewith, or a failure to use such care for his safety as an ordinary prudent person would have used under the same or similar circumstances. On the other hand, under the assumption of risk, even though the risk be obvious, the person may be free from any suggestion of fault or negligence on his part. While under a certain set of facts the two may be difficult to distinguish and sometimes seem to overlap, yet when carefully considered they can be distinguished and are distinct and separate and not inconsistent."

The third question, whether the facts presented a question of "contributory negligence, assumption of risk, or both," received the following answer: "While situations may arise where the conduct of the guest is such that none of his acts may fall within the category of negligence but where he had full knowledge and voluntarily accepted the risk of those things which caused the accident out of which he was injured and the question be one of assumption of risk, however, generally the question of whether or not the conduct of the guest while riding in the car of his host would preclude him from recovering damage if his host is guilty of gross negligence in causing the same is one of contributory negligence."

The court in Landrum v. Roddy, *supra*, did not determine that an instruction on assumption of risk should be given. However, in subsequent cases involving similar factual situations, this court has repeatedly held it is proper to instruct on both contributory negligence and assumption of risk, often citing Landrum v. Roddy, *supra*, for this proposition. See, Circo v. Sisson, 193 Neb. 704, 229 N. W. 2d 50 (1975); Raskey v. Hulewicz, 185 Neb. 608, 177 N. W. 2d 744 (1970); Schaffer v. Bolz, 181 Neb. 609, 149 N. W. 2d 334 (1967); Kaufman v. Tripple, 180 Neb. 593, 144 N. W. 2d 201 (1966); O'Brien v. Anderson, 177 Neb. 635, 130 N. W. 2d 560 (1964); Hess v. Holdsworth, 176 Neb. 774, 127 N. W. 2d 487 (1964).

This case is controlled by the following rule enunciated in Kaufman v. Tripple, *supra*: "The defense of assumption of risk is not inconsistent with the defense of contributory negligence. It is essential to the defense of contributory negligence that negligence of the plaintiff be a proximate cause or a proximately contributory cause of the injury while assumption of risk is a defense when one voluntarily exposes himself to the injury, although it plays no part in causing the injury." Under the facts of this case, the jury could find that Sandberg knew or should have known that Hoogensen's state of intoxication was such that it would be dangerous to ride with him. The tail pipe incident suggests a high degree of intoxication on the part of both decedents. It was shortly thereafter that the fatal accident occurred. There was no error in the submission of assumption of risk to the jury.

Plaintiff objects to instruction No. 8, but at the conference on instructions did not specifically raise the point she now raises. The instruction included the language: "If the defendant has established by a preponderance of the evidence that the negligence of the plaintiff's decedent was the sole proximate cause of his death, then your verdict will be for the defendant." We have difficulty understanding how plaintiff could have been prejudiced by this part of the instruction. It is putting a greater burden on the defendant than is required. Defendant's burden was to establish that the negligence of plaintiff's decedent was the proximate cause or a proximately contributing cause of the death of plaintiff's decedent.

Plaintiff assigns as error the giving of instruction No. 11, the standard comparative negligence instruction. The jury was instructed plaintiff could not recover if "the negligence of the defendant, when compared with that of the plaintiff, was less than gross." She contends this instruction conflicts with instruction No. 7, in which the court instructed the jury that

defendant's decedent was grossly negligent as a matter of law. While this point is assigned as error, it is not argued in plaintiff's brief. We suggest, however, that plaintiff fails to recognize the term "gross negligence" has different meanings under the automobile guest statute and the comparative negligence statute. See Brackman v. Brackman, 169 Neb. 650, 100 N. W. 2d 774 (1960). This distinction was called to the attention of the jury by instruction No. 12 and the jury could not have been misled.

While no one can know exactly what transpired on the last ride of the two decedents, the issues raised presented questions for the jury. Those issues were properly submitted. The judgment of the District Court is affirmed.

AFFIRMED.