482 S.E.2d 569

Alvin DAVENPORT, Appellant–Respondent,

v.

COTTON HOPE PLANTATION HORIZONTAL PROPERTY
REGIME, Respondent–Appellant,

v.

CARSON LANDSCAPING COMPANY, INC.,
Third–Party Defendant–Respondent.

No. 2621.

Court of Appeals of South Carolina.

Heard April 1, 1996.

Decided Jan. 20, 1997.

Rehearing Denied March 19, 1997.

508

G. Richardson Wieters, of G. Richardson Wieters, P.C., Hilton Head Island, for appellant-respondent.

Russell S. Stemke, of Wise & Cole, Charleston, for respondent-appellant.

A. Parker Barnes, Jr., of A. Parker Barnes & Associates, Beaufort, for third-party defendant-respondent.

Amicus curiae Stephen P. Groves, of Young, Clement, Rivers & Tisdale, Charleston, on behalf of South Carolina Defense Trial Attorneys' Association.

HEARN, Judge:

This case was heard en banc to determine whether assumption of risk survives as a complete defense in negligence actions following South Carolina's adoption of comparative negligence. We hold it does not.

Appellant, Alvin Davenport, brought this negligence action against Cotton Hope Plantation Horizontal Property Regime, who in turn brought a third-party claim against Carson Landscaping, Inc. for indemnity. At the close of the evidence, the trial court directed a verdict against Davenport on his negligence claim, finding Davenport assumed the risk. The trial court also held Davenport was greater than fifty percent at fault as a matter of law. The trial court then directed a verdict in favor of Carson on Cotton Hope's third-party indemnification claim. Davenport and Cotton Hope appeal. We reverse and remand.

## FACTS

Davenport was a resident of Cotton Hope Condominiums on Hilton Head Island. His condominium was located on the top floor of one of the buildings within Cotton Hope Plantation. Three stairways served Davenport's floor, one on each end of the building and the third in the middle of the building. In

June 1991, Davenport began reporting that the floodlights were out in the middle stairway that he used.

On the evening of August 12, 1991, Davenport left his condominium to go to work. Davenport descended the middle stairway, the one closest to his unit. The lights on the lower-level stairs were not working that night, although the lights were working at the top of the stairway. As Davenport descended the stairway, he slipped, fell on the lower-level stairs, and injured himself.

Prior to Davenport's accident, Cotton Hope, through its management company, Property Administrators, Inc., entered into a contract with Carson on April 15, 1991, whereby Carson agreed to provide certain services for common areas at Cotton Hope in consideration for payment of $3,000 per month. Under the contract, Carson agreed to check all outdoor lights and change the bulbs as needed. Carson also agreed to maintain the pools, trees, irrigation systems, lawns, shrubs, and parking areas.

The contract between Cotton Hope and Carson further provided:

> [Carson] shall indemnify and hold harmless [Cotton Hope] ... from and against claims, damages, losses and expenses, including but not limited to **attorney fees,** arising out of or resulting from performance of [Carson's] work under this Contract, provided that such claim, damage, loss or expense is attributable to body injury ... **but only to the extent caused in whole or in part by negligent acts or omission of [Carson]** ... regardless of whether or not the claim, damage, loss or expense is caused in part by [Cotton Hope]. (emphasis added).

## I. DAVENPORT'S APPEAL

Davenport asserts the trial court erred in directing a verdict against him on the ground of assumption of risk, arguing that (1) assumption of risk is no longer a complete defense to a negligence action since our Supreme Court's adoption of comparative negligence, and (2) whether Davenport assumed the risk was a fact question that the trial judge should have submitted to the jury. We agree.

In 1991, the South Carolina Supreme Court joined the vast majority of our sister jurisdictions in adopting comparative negligence. *Nelson v. Concrete Supply Co.*, 303 S.C. 243, 399 S.E.2d 783 (1991).[1] Finding comparative negligence to be more equitable than the archaic rule of contributory negligence, the court in *Nelson* adopted a modified version of comparative negligence known as the "less than or equal to" approach. Under this version, a plaintiff in a negligence action may recover damages if his or her negligence is less than or equal to that of the defendant's.[2] *Id.* Stated another way, a plaintiff in South Carolina may recover only if his negligence does not exceed that of the defendant's. *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 67, at 471–73 (5th ed. 1984).

As of 1996, forty-six states have adopted comparative negligence.[3] This nationwide trend away from adherence to an "all or nothing" rule such as contributory negligence in favor of the shared fault approach of comparative negligence has had a spillover effect in related areas. Doctrines like last clear chance, which was developed to ameliorate the harshness of the contributory negligence rule, and assumption of risk, which barred plaintiffs from recovery in cases where they knowingly and voluntarily encountered inherent risks, have

---

1. In *Nelson*, the supreme court referred the bench and bar to *Langley v. Boyter*, 284 S.C. 162, 325 S.E.2d 550 (Ct.App.1984), *quashed on procedural grounds*, 286 S.C. 85, 332 S.E.2d 100 (1985), for "an exhaustive analytical discussion of the history and merits of comparative negligence." 303 S.C. at 244, 399 S.E.2d at 784.

2. There are four comparative negligence systems: pure, slight-gross, and two modified approaches. A pure system of comparative negligence permits the plaintiff to recover, less the plaintiff's share of fault, regardless of the percentage of the plaintiff's fault. F. Patrick Hubbard & Robert L. Felix, *Comparative Negligence in South Carolina: Implementing Nelson v. Concrete Supply Co.*, 43 S.C.L.Rev. 273, 278 (1992). Under the slight-gross system, the plaintiff recovers, less the plaintiff's share of fault, only if the plaintiff's fault is slight and the defendant's fault is gross. *Id.* In addition to the modified approach adopted in *Nelson*, which permits the plaintiff to recover if his or her percentage of fault is equal to or less than the defendant's, there is a second modified version known as the "less-than" system in which the plaintiff recovers if the plaintiff's share of fault is less than the defendant's. *Id.*

3. Only Alabama, Maryland, North Carolina, Virginia, and the District of Columbia have not adopted some form of comparative fault.

generally disappeared under comparative negligence. *See* Guido Calabresi & Jeffrey O. Cooper, *New Directions in Tort Law,* 30 Val.Univ.L.Rev. 859, 868, 872, 876–77 (1996); Keeton, *supra,* at 477–78.

The doctrine of assumption of risk originally arose in the context of the master-servant relationship, whereby the agreement to become employed also included the agreement to assume the risks associated with that employment. *See Hooper v. Columbia & Greenville R.R. Co.,* 21 S.C. 541, 546–47 (1884). Since its introduction into South Carolina law, courts have struggled to distinguish it from the doctrine of contributory negligence. *E.g., Bodie v. Charleston & W.C. Ry. Co.,* 61 S.C. 468, 39 S.E. 715 (1901); *Barksdale v. Charleston & W.C. Ry.,* 66 S.C. 204, 44 S.E. 743 (1903). The following passage is typical of their analysis:

> The defense of assumption of risk and contributory negligence are so similar that they may fade into each other. . . . Nearly every case of contributory negligence on the part of an employee involves in a general sense some assumption of risk, because in order to be guilty of contributory negligence there must be the risk of apparent danger. . . . [If the employee] improperly risks the danger, . . . it would be contributory negligence. *Barksdale,* 66 S.C. at 211, 44 S.E. at 745.

When the General Assembly enacted South Carolina's first workers' compensation law in 1935, the defenses of assumption of risk and contributory negligence no longer had application in the master-servant area. The doctrine of assumption of risk survived, however, when it was thereafter assimilated into the body of general negligence law. *See, e.g., Smith v. Edwards,* 186 S.C. 186, 195 S.E. 236 (1938). The contractual underpinnings which were important to the doctrine's utility in the employment law setting faded, and the defense became more a matter of implied *consent* than implied *contract. Compare Daniel v. Tower Trucking Co., Inc.,* 205 S.C. 333, 348–49, 32 S.E.2d 5, 9 (1944) (stating assumption of risk rests in contract) *with Senn v. Sun Printing Co.,* 295 S.C. 169, 173, 367 S.E.2d 456, 458 (Ct.App.1988) (stating assumption of risk turns on assent, voluntariness, and choice).

Courts continued, however, in their effort to distinguish the defense of assumption of risk from the doctrine of contributory negligence, while at the same time conceding their kinship. *E.g., Cooper v. Mayes,* 234 S.C. 491, 495–96, 109 S.E.2d 12, 15 (1959); *Ruth v. Lane,* 254 S.C. 431, 433–34, 175 S.E.2d 820, 821 (1970). As noted by Professors Hubbard and Felix, "South Carolina recognizes that assumption of risk and contributory negligence overlap." Hubbard & Felix, *supra* note 2, at 290.

Former Chief Judge of the South Carolina Court of Appeal Alexander M. Sanders, Jr., provided this insight into the connection between contributory negligence and assumption of risk:

> The traditionally recognized distinction between the two defenses is that the former is a matter of some fault or departure from the standard of conduct of a reasonable person, while the latter is a matter of knowledge of a danger and voluntary acquiescence in it.
>
> In some cases, a plaintiff may be acting reasonably in assuming a risk and thus not be negligent because the risk he assumes is outweighed by the advantage of his conduct. For example, if a plaintiff dashed into a fire because it was necessary to save his child, it might be argued that he assumed the risk of being injured but it could scarcely be argued that he acted unreasonably under the circumstances.
>
> In other cases, the conduct of a plaintiff in assuming a risk may itself be unreasonable and thus negligent because the risk he assumes is out of all proportion to the advantage he is seeking to gain. For example, if a plaintiff dashed into a fire to save his hat, it might be argued that he both assumed the risk of being injured and that he acted unreasonably.
>
> In such cases, a defendant can maintain both defenses.

*Litchfield Co. of S.C., Inc. v. Sur–Tech, Inc.,* 289 S.C. 247, 249, 345 S.E.2d 765, 766 (Ct.App.1986) (citations omitted).

South Carolina's experience in adopting assumption of risk, first in the area of employment law, with its contractual trappings, and then as a tort concept based on principles of consent, is not unique. *See, e.g., Tuttle v. Detroit, Grand Haven & Milwaukee Ry.,* 122 U.S. 189, 195–96, 7 S.Ct. 1166, 1168–69, 30 L.Ed. 1114 (1887); *Rini v. Oaklawn Jockey Club,*

861 F.2d 502, 504–05 (8th Cir.1988); *Murray v. Ramada Inns, Inc.*, 521 So.2d 1123, 1126–27 (La.1988); *Rutter v. Northeastern Beaver County Sch. Dist.*, 496 Pa. 590, 437 A.2d 1198, 1206 (1981). Nor were South Carolina courts alone in grappling with the academic and practical differences and similarities between assumption of risk and contributory negligence. *See, e.g., Tiller v. Atlantic Coast Line R.R. Co.*, 318 U.S. 54, 61–63, 63 S.Ct. 444, 448–49, 87 L.Ed. 610 (1943); *Braswell v. Economy Supply Co.*, 281 So.2d 669, 677 (Miss.1973).

In resolving the question at issue here, we have considered the experience of other states in reconciling assumption of risk with their comparative negligence schemes. Although comparative negligence systems vary substantially based upon the type of approach used and whether it was adopted judicially or legislatively, there is near consensus in our sister states' treatment of assumption of risk.

"In virtually every jurisdiction that adopted comparative negligence, implied assumption of risk has been nominally abolished." Calabresi & Cooper, *supra*, at 876. This is so whether the comparative negligence system was adopted statutorily or judicially and regardless of the version of comparative negligence adopted.[4] Of the forty-six jurisdictions main-

---

4. Ten states have abolished assumption of the risk entirely as a separate affirmative defense before, or without any reference to, the adoption of the state's particular comparative negligence law. *E.g., Leavitt v. Gillaspie*, 443 P.2d 61, 68 (Alaska 1968); *Bulatao v. Kauai Motors, Ltd.*, 49 Haw. 1, 406 P.2d 887, 894 (1965); *Messmer v. Ker*, 96 Idaho 75, 524 P.2d 536, 541 (1974); *Rosenau v. City of Estherville*, 199 N.W.2d 125, 133 (Iowa 1972) (codified at Iowa Code Ann. § 619.17 (West Supp. 1996)); *Parker v. Redden*, 421 S.W.2d 586, 592 (Ky.1967); *Felgner v. Anderson*, 375 Mich. 23, 133 N.W.2d 136, 153 (1965); *Bolduc v. Crain*, 104 N.H. 163, 181 A.2d 641, 644 (1962); *Meistrich v. Casino Arena Attractions, Inc.*, 31 N.J. 44, 155 A.2d 90, 92 (1959); *Williamson v. Smith*, 83 N.M. 336, 491 P.2d 1147, 1152 (1971); *McConville v. State Farm Mut. Auto. Ins. Co.*, 15 Wis.2d 374, 113 N.W.2d 14, 16 (1962).

Ten other states by statute have abolished or subsumed the defense of assumption of risk into their comparative fault schemes. Ariz.Rev.Stat. Ann. § 12–2505 (Supp.1996); Ark.Code Ann. § 16–64–122(c) (Michie Supp.1995); Conn.Gen.Stat.Ann. § 52–572h(c) (West 1991); Ind.Code Ann. § 34–4–33–2(a) (Burns Supp.1996); Mass.Gen. Laws Ann. ch. 231, § 85 (West 1985); N.Y.Civ.Prac.L. & R. § 1411 (McKinney 1976); N.D.Cent.Code § 9–10–06 (1987); Okla.Stat.Ann. tit. 23, § 12 (West 1987); Or.Rev.Stat. § 18.475(2) (1988); Utah Code Ann. § 78–27–37 (Supp.1996).

taining comparative fault systems, only Georgia, Mississippi, Nebraska, Rhode Island, and South Dakota have not changed their application of assumption of risk.[5] Respondent urges us to accept this minority approach.

We choose, instead, to align South Carolina with the overwhelming majority of jurisdictions which have abolished assumption of risk as a total bar to recovery. In doing so, we reject the argument advanced by Cotton Hope that assumption of risk, emanating from contractual principles, is so distinct from the tort doctrine of contributory negligence that it therefore survives the demise of contributory negligence.[6] As recognized by Hubbard and Felix: "Virtually all states

---

The remaining states have also altered or abolished the common law doctrine. *E.g., Knight v. Jewett*, 3 Cal.4th 296, 11 Cal.Rptr.2d 2, 834 P.2d 696, 701 (1992); *Brown v. Kreuser*, 38 Colo.App. 554, 560 P.2d 105, 106 (1977) (codified at Colo.Rev.Stat.Ann. § 13–21–111.7 (West 1987)); *Fell v. Zimath*, 575 A.2d 267, 268–69 (Del.Super.Ct.1989); *Blackburn v. Dorta*, 348 So.2d 287, 289–93 (Fla.1977); *Barrett v. Fritz*, 42 Ill.2d 529, 248 N.E.2d 111, 115 (1969); *Jackson v. City of Kansas City*, 235 Kan. 278, 680 P.2d 877, 899 (1984); *Murray v. Ramada Inns, Inc.*, 521 So.2d 1123, 1132 (La.1988); *Wilson v. Gordon*, 354 A.2d 398, 401–02 (Me.1976); *Springrose v. Willmore*, 292 Minn. 23, 192 N.W.2d 826, 827 (1971) (codified at Minn.Stat.Ann. § 604.01(1a) (West Supp. 1997)); *Gustafson v. Benda*, 661 S.W.2d 11, 16 (Mo.1983) (en banc); *Kopischke v. First Continental Corp.*, 187 Mont. 471, 610 P.2d 668, 687 (1980); *Mizushima v. Sunset Ranch, Inc.*, 103 Nev. 259, 737 P.2d 1158, 1161 (1987); *Anderson v. Ceccardi*, 6 OBR 170, 6 Ohio St.3d 110, 451 N.E.2d 780, 782–83 (1983) (codified at Ohio Rev.Code.Ann. § 2315.19(A)(2) (Anderson 1995)); *Rutter v. Northeastern Beaver Cty. Sch. Dist.*, 496 Pa. 590, 437 A.2d 1198, 1209 (1981); *Perez v. McConkey*, 872 S.W.2d 897, 906 (Tenn.1994); *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 758 (Tex.1975); *Sunday v. Stratton Corp.*, 136 Vt. 293, 390 A.2d 398, 404 (1978); *Lyons v Co.*, 83 Wash.2d 86, 515 P.2d 821, 826 (1973) (en banc) (codified at Wash.Rev.Code Ann. §§ 4.22.005 & 4.22.015 (West 1988)); *King v. Kayak Mfg. Corp.*, 182 W.Va. 276, 387 S.E.2d 511, 517 (1989); *Brittain v. Booth*, 601 P.2d 532, 534 (Wyo.1979).

5. *See, e.g., Clements v. Long*, 167 Ga.App. 11, 305 S.E.2d 830, 832–33 (1983); *Singleton v. Wiley*, 372 So.2d 272, 275 (Miss.1979); *Landrum v. Roddy*, 143 Neb. 934, 12 N.W.2d 82, 88–89 (1943); *Kennedy v. Providence Hockey Club, Inc.*, 119 R.I. 70, 376 A.2d 329, 332 (1977); *Bartlett v. Gregg*, 77 S.D. 406, 92 N.W.2d 654, 657–58 (1958).

6. We note that former Chief Justice J.B. Ness opined shortly after the *Nelson* decision that assumption of risk was "no longer applicable in a case governed by comparative negligence." J.B. Ness, *Instructing the Jury in a Comparative Negligence Case* at 3–4 (CLE Materials, S.C. Bar, July 12, 1991).

have rejected these arguments and have abolished assumption of risk as a total bar to recovery in tort." Hubbard & Felix, *supra* note 2, at 289.

Regardless of the conceptual distinctions between assumption of risk and contributory negligence, assumption of risk is a tort defense, much closer to contributory negligence than to any contractual principle. To hold that assumption of risk survives the adoption of comparative negligence unaltered, solely because it began its existence as a contractual principle, ignores this practical reality and allows form to triumph over substance. Moreover, the purpose behind South Carolina's adoption of comparative negligence, which is based on principles of accountability and contribution rather than on all-or-nothing rules and defenses, would be seriously undermined. *See Nelson,* 303 S.C. at 244, 399 S.E.2d at 784; Hubbard & Felix, *supra* note 2, at 280.

■ Accordingly, we hold that assumption of risk is no longer a complete defense to an injured person's negligence claim. Assumption of risk is to be treated as another facet of comparative negligence rather than as an absolute bar to recovery.[7] The trial judge, therefore, erred in holding that assumption of risk operated as a complete defense.

---

7. We suggest the following charge which merges assumption of risk with comparative negligence:

In determining the relative percentages of negligence of the parties to this action you, the jury, may consider:
1. Whether the conduct was mere inadvertence or whether the party was aware of the danger involved, or reasonably should have been aware of the danger involved;
2. The seriousness of the risk created by this conduct, including the number of persons endangered and the potential seriousness of the injury;
3. The nature of the goal the party was seeking to attain by his conduct and the need to achieve the goal in this manner;
4. The party's superior or inferior aptitude or capacity, and his ability to realize and eliminate the risk involved;
5. The particular circumstances confronting the party at the time his conduct occurred;
6. The relative closeness of the causal relationship of the negligent conduct of the defendant(s) and the harm to the plaintiff; and
7. The conscious failure to observe due care or conscious indifference to respect the rights and safety of others.

 The trial court also erred in ruling as a matter of law that Davenport was more than fifty percent at fault in causing his injuries. As the South Carolina Supreme Court recently stated in *Anderson v. South Carolina Dep't of Highways & Pub. Transp.*, 322 S.C. 417, 472 S.E.2d 253 (1996):

> A verdict should not be directed in a negligence action where there is a question of fact for the jury, and the evidence is such that reasonable persons might differ. The question of whether due care was exercised is controlled by the circumstances of the particular case **and will not be determined by the court, as a matter of law, if the testimony is conflicting or the inferences to be drawn therefrom are doubtful.** If the inferences properly deducible from controverted evidence are doubtful, or tend to show both parties guilty of negligence, and there may be a fair difference of opinion as to whose act proximately caused the injury complained of, then the question must be submitted to a jury.

*Id.* at 421, 472 S.E.2d at 255 (citations omitted). The relative negligence of Davenport and Cotton Hope turned on factual considerations which should have been submitted to the jury. Accordingly we reverse the trial judge's decision to direct a verdict against Davenport, and remand for new proceedings consistent with this opinion.[8]

## II. COTTON HOPE'S CROSS-APPEAL

In its cross-appeal, Cotton Hope argues the trial judge erred in directing a verdict in favor of Carson on Cotton

---

8. The dissent argues Davenport's counsel conceded that Davenport assumed the risk based on the following colloquy:

> Court: Mr. Wieters, I can't think of a better case of assumption of the risk than this.

> Wieters: Yes, sir, that would probably be true, your honor, if we were in another day and age, but unfortunately, your honor, Mr. Stemke's position, the law in this state we believe has changed.

We do not believe that in agreeing with the judge's comment, "I can't think of a better case of assumption of the risk," Davenport's counsel conceded that Davenport assumed the risk as a matter of law. Instead, we construe this comment as further argument to the trial judge that even if Davenport assumed the risk, the defense of assumption of the risk was no longer a complete bar to recover. In the alternative, we construe the statement as a concession that it was a perfect case to instruct the jury on the law of assumption of risk.

Hope's third-party indemnity claim. Cotton Hope maintains it still has a viable third-party indemnity claim against Carson independent of its liability to Davenport.

. Because we remand for a jury determination of the comparative negligence of Davenport, Cotton Hope, and Carson, we must also remand for a jury determination on the issue of indemnity pursuant to the contract between Carson and Cotton Hope. Thus, we do not reach the issue of whether the trial court's finding that Davenport assumed the risk of injury precluded Cotton Hope's claim for indemnity against Carson.

Accordingly, the decision of the trial judge is

**REVERSED AND REMANDED.**

HOWELL, C.J., and CURETON, CONNOR, ANDERSON, HUFF and HOWARD, JJ., concur.

GOOLSBY, J., dissenting in a separate opinion.

STILWELL, J., concurring in dissent in a separate opinion.

GOOLSBY, Judge (dissenting):

I respectfully dissent. Unlike the majority, I would uphold the trial court's conclusion that assumption of the risk is a complete defense to an action based on negligence.

Alvin Davenport asserts the trial court erred in directing a verdict for Cotton Hope Plantation Horizontal Property Regime on the ground of assumption of the risk, arguing (1) that assumption of the risk is no longer a complete defense to a negligence action since our supreme court's adoption of comparative negligence, and (2) that whether Davenport assumed the risk was a fact question for the jury's determination. I would find no error.

In *Nelson v. Concrete Supply Co.*, 303 S.C. 243, 399 S.E.2d 783 (1991), our supreme court adopted the doctrine of comparative negligence and overruled South Carolina's long-standing rule of contributory negligence.

Davenport bases his argument that South Carolina's adoption of comparative negligence eliminated assumption of the risk as a complete bar to recovery in a negligence action on the ground that assumption of the risk is merely a "branch" of

contributory negligence. It is well established in South Carolina, however, that contributory negligence and assumption of the risk are separate and distinct concepts. *See Ruth v. Lane,* 254 S.C. 431, 175 S.E.2d 820 (1970) (explaining the distinction between the two defenses); *cf.* Rule 8(c), SCRCP (listing contributory negligence and assumption of the risk as separate defenses).

In *Litchfield Co. of S.C. v. Sur–Tech, Inc.,* 289 S.C. 247, 345 S.E.2d 765 (Ct.App.1986), this court discussed the distinction:

> The traditionally recognized distinction between the two defenses is that the former is a matter of some fault or departure from the standard of conduct of a reasonable person, while the latter is a matter of knowledge of a danger and voluntary acquiescence in it.
>
> In some cases, a plaintiff may be acting reasonably in assuming a risk and thus not be negligent because the risk he assumes is outweighed by the advantage of his conduct. For example, if a plaintiff dashed into a fire because it was necessary to save his child, it might be argued that he assumed the risk of being injured but it could scarcely be argued that he acted unreasonably under the circumstances.
>
> In other cases, the conduct of a plaintiff in assuming a risk may itself be unreasonable and thus negligent because the risk he assumes is out of all proportion to the advantage which he is seeking to gain. For example, if a plaintiff dashed into a fire in order to save his hat, it might well be argued that he both assumed the risk of being injured and that he acted unreasonably. In such cases, a defendant can maintain both defenses.

*Id.* at 249, 345 S.E.2d at 766 (citation omitted). I would therefore reject the notion that assumption of the risk is a mere branch of contributory negligence and hold that our state's adoption of comparative negligence did nothing to eliminate assumption of the risk as a complete bar to a negligence action. *See Clements v. Long,* 167 Ga.App. 11, 305 S.E.2d 830 (1983); *Riley v. Davison Constr. Co.,* 381 Mass. 432, 409 N.E.2d 1279 (1980); *Singleton v. Wiley,* 372 So.2d 272 (Miss.1979); *Kennedy v. Providence Hockey Club, Inc.,* 119 R.I. 70, 376 A.2d 329 (1977) (all retaining assumption of the risk as an absolute defense despite adoption of a comparative

fault system); *see also Roberts v. King*, 102 Ga.App. 518, 116 S.E.2d 885 (1960); *Sandberg v. Hoogensen*, 201 Neb. 190, 266 N.W.2d 745 (1978); *Bartlett v. Gregg*, 77 S.D. 406, 92 N.W.2d 654 (1958) (all distinguishing assumption of the risk from contributory negligence).

Davenport also argues the question of whether he assumed the risk was a fact question that the trial court should have submitted to the jury. I would not address that argument because it has not been properly preserved for our review. *See Schofield v. Richland County Sch. Dist.*, 316 S.C. 78, 447 S.E.2d 189 (1994) (an issue not raised to or ruled on by the trial court is not preserved for appellate review). In his argument at trial in response to Cotton Hope's motion for a directed verdict, Davenport essentially conceded he assumed the risk when he argued only that assumption of the risk was no longer the law of this state.[1]

Because I would hold assumption of the risk remains an affirmative defense in actions based on negligence and the question of whether Davenport assumed the risk was not preserved, I would not reach the question of whether the trial court erred in directing a verdict in favor of Cotton Hope on the additional ground that Davenport's negligence in walking down a darkened stairwell exceeded any negligence on Cotton Hope's part.

I would further hold the trial court erred in directing a verdict for Carson Landscaping, Inc., on Cotton Hope's third-party claim for attorney fees. I believe whether or not Cotton Hope is ultimately held liable to Davenport, it presented sufficient evidence to recover against Carson under either a contractual indemnification theory or an equitable indemnification theory.

Viewing the facts regarding the third-party claim in the light most favorable to Cotton Hope, there was ample evidence to support the inferences that Carson negligently failed to fix the stairway lights and negligently cut the wires that

---

1. Davenport's counsel, responding to the trial court's assertion that the case at bar was a perfect assumption of the risk case, stated, "Yes, Sir, that would be probably true, your Honor, if we were in another day and age but unfortunately, your Honor, Mr. Stemke's position, the law in this State we believe has changed."

caused the lights to malfunction in the first place. The contract between Cotton Hope and Carson specifically provided Carson would indemnify Cotton Hope for attorney fees arising from personal injury claims resulting from Carson's negligence, whether or not the claim was partially attributable to any negligence on Cotton Hope's part. Under these circumstances, then, Cotton Hope presented sufficient evidence to support a claim for contractual indemnification. *See Federal Pac. Elec. v. Carolina Prod. Enters.*, 298 S.C. 23, 378 S.E.2d 56 (Ct.App.1989) (a contract for indemnification will not be construed to indemnify the indemnitee against losses resulting from its own negligent acts unless such intention is expressed in clear and unequivocal terms).

In addition, there was evidence reasonably supporting each of the elements of an equitable indemnification claim, specifically (1) that Cotton Hope had become involved in a legal dispute because of Carson's negligence; (2) that the dispute was with a third party, namely Davenport; and (3) that Cotton Hope had incurred attorney fees in defending the action.[2] *See Addy v. Bolton*, 257 S.C. 28, 183 S.E.2d 708 (1971) (stating the elements a plaintiff must prove to recover attorney fees and costs under an equitable indemnification theory). Moreover, contrary to Carson's argument that, as a matter of law, Cotton Hope's own negligence precluded its claim for equitable indemnification, there was evidence reasonably supporting the inference that no conduct on Cotton Hope's part constituted negligence proximately causing Davenport's accident. *Cf. Abeles v. Great Atl. & Pac. Tea Co.*, 244 S.C. 508, 137 S.E.2d 604 (1964) (contributory negligence has ordinarily been an issue for the jury and has rarely been a question of law for the court).

STILWELL, Judge (concurring in dissent in separate opinion):

I concur with the result reached by Judge Goolsby and join in the dissent. For the reasons outlined by Judge Goolsby, I believe our state's adoption of comparative negligence did not

---

2. The trial court had alerted all parties it would receive evidence of Cotton Hope's attorney fees after the verdict if Cotton Hope received a favorable verdict on its indemnification claim.

eliminate assumption of the risk as a complete bar to a negligence action.

I write separately to emphasize my firmly held belief that, notwithstanding the trends of other jurisdictions or the argument of the majority that elimination of assumption of the risk would be consistent with the purpose behind South Carolina's adoption of comparative negligence, this court is bound to follow the decisions of the South Carolina Supreme Court. S.C. Const. art. V., sec. 9 ("The decisions of the Supreme Court shall bind the Court of Appeals as precedents."); *Langley v. Boyter*, 286 S.C. 85, 87, 332 S.E.2d 100, 101 (1985) (reversing this court's adoption of comparative negligence and holding, "That issue must await the permission of [the supreme court] before a change in this basic, well-established law is brought about, unless the Legislature acts on the matter beforehand."); *State v. Watts*, 320 S.C. 377, 465 S.E.2d 359 (Ct.App.1995) (declining to follow the most recent interpretation of the United States Constitution by the United States Supreme Court, the Supremacy Clause notwithstanding, where the interpretation was in conflict with the most recent South Carolina Supreme Court precedent).

Because I view the majority opinion as conflicting with well-established South Carolina Supreme Court precedent recognizing the doctrine of assumption of the risk as a complete bar to a negligence recovery, I would affirm.