521 S.E.2d 755

**Sabrina NEDROW, Appellant,**

**v.**

**David PRUITT, d/b/a Bruns Real Estate Company, and Piedmont Natural Gas Company, Inc., Respondents.**

**No. 3045.**

Court of Appeals of South Carolina.

Heard June 8, 1999.

Decided Sept. 13, 1999.

Rehearing Denied Nov. 6, 1999.

D. Garrison Hill and O.W. Bannister, Jr., both of Hill, Wyatt & Bannister, of Greenville, for appellant.

W. Francis Marion, Jr. and Christopher R. Antley, both of Haynsworth, Marion, McKay & Guerard; and W. Howard Boyd and C. William McGee, both of Gibbes, Gallivan, White & Boyd, all of Greenville, for respondents.

HUFF, Judge:

Sabrina Nedrow sued David Pruitt, d/b/a Bruns Real Estate Company (Pruitt), and Piedmont Natural Gas Company, Inc. (Piedmont) alleging negligence and failure to make certain repairs as required by the Residential Landlord Tenant Act (RLTA) against Pruitt and breach of warranty and negligence against Piedmont. Only the claims of negligence were submitted to the jury, which found in favor of both defendants. Nedrow appeals, disputing the trial court's jury charges, the trial court's refusal to strike the defense of assumption of the risk, and the trial court's refusal to admit certain evidence. We reverse and remand.

## FACTS

A one-year lease was executed on January 28, 1993, between Nedrow and Pruitt. The lease provided, in part:

> During the period of his tenancy Resident agrees to maintain this property in as good state as he finds it, ordinary wear and tear excepted; and will have repaired at his expense, any damage done to the water and electrical fixtures, replace broken glass, keep sinks, lavatories, commodes, and sewer lines open, repair any plumbing or heating equipment that may be damaged by his negligence. Resident will pay the first Sixty Dollars ($60.00) of any repairs.

Nedrow moved into the apartment in February, 1993. The apartment had a gas heater and a gas stove. She called Piedmont and requested the gas be turned on. One of the Piedmont employees who came to the apartment noticed one of two pieces of glass was missing from the front of the heater. The employee explained to Nedrow he had to turn off the gas because the heater was dangerous when missing the glass. Later that same day, Piedmont replaced the glass on the heater and indicated the heater was working properly.

About two weeks later, Nedrow discovered that one of the heater's elements was leaning on the glass and that the glass was cracked. Nedrow explained: "I cut the heater off immediately because I thought with the element leaning on the glass and the glass being cracked as hot as the elements got that it could fall through and catch the hardwood floors on

fire." Nedrow's father later removed the glass and the element.

When Nedrow called Pruitt to tell him the glass was broken again, he agreed to pay for the cost of the glass but not for labor. She testified he told her to go to Piedmont to get the glass and install it herself. Pruitt testified they agreed Piedmont would replace the glass on the heater. Pruitt stated Nedrow would pay for the repair and he would pay for the glass. He testified Nedrow never indicated she was going to repair the heater herself.

Nedrow then visited Piedmont and gave an employee the serial number from her heater. An employee, Nelson Skelton, showed her two sizes of glass. Nedrow chose the larger piece.

Nedrow installed the elements and glass herself. The glass, however, was too small to cover the entire opening, leaving about a one and a half inch gap.

> After many tries inserting [the glass] thinking I had inserted it improperly I chose to leave it that way because there was no flame on that corner of the left side. There was no flame if (sic) front of that gap there ... When I put that glass on and I put the other two elements in, I intentionally pushed all four elements more to the right side because where the gap was there was no flame coming up.

She explained her reason for not exchanging the glass for a different size: "[I]t wasn't my responsibility. I thought if [Pruitt] didn't come and take care of it that it wasn't that much of a danger." Nedrow testified she told Pruitt the replacement glass did not fit properly, and he replied he would take care of it. Pruitt denied Nedrow alerted him about the ill-fitting glass. Pruitt did not inspect the heater. Nedrow explained she did not call Piedmont because, "I may have been able to afford it ... But it was [Pruitt's] responsibility."[1]

---

1. The RLTA provides a comprehensive set of remedies available to a tenant when a landlord fails to meet his obligations. Pursuant to S.C.Code Ann. § 27–40–610 (1991), a tenant may, upon fourteen days written notice, terminate the rental agreement because of "noncompliance with § 27–40–440 materially affecting health and safety or the physical condition of the property". Moreover, a tenant may recover actual damages for noncompliance with § 27–40–440, and may recover reasonable attorney's fees if such noncompliance is wilful.

Nedrow continued to use the heater. She testified that the elements "started shifting," and that she had to re-adjust them at least three or four times.

On February 28, 1994, while Nedrow was standing about one foot in front of the heater, her ankle-length nightgown caught fire. Nedrow became engulfed in flames, suffering first and second degree burns to her back, chest, and upper extremities.

After a trial on the merits, the jury returned a defense verdict. The first question on the special verdict form asked the jury: "Do you find that the Defendant David Pruitt was negligent and that such negligence proximately caused the Plaintiff's injuries?" The jury responded no. The second question asked: "Do you find that the Defendant Piedmont Natural Gas Company, Inc. was negligent and that such negligence proximately caused the Plaintiff's injuries?" Again, the jury responded no. The instructions on the verdict form provided: "If you answer No as to both Defendants, Stop and Deliberate No Further." The jury, therefore, never reached questions relating to Nedrow's negligence, assumption of the risk, or damages.

## DISCUSSION

In an action at law, on appeal of a case tried by a jury, our jurisdiction extends only to correction of errors of law, and a factual finding of the jury will not be disturbed unless a review of the record discloses that there is no evidence which reasonably supports the jury's findings. *Townes Associates, Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E.2d 773 (1976).

### I.

Nedrow argues the trial judge erred in refusing to admit the proffered testimony of Nelson Skelton, an employee of Piedmont. Skelton sold Nedrow the replacement glass for the heater in October 1993.

Skelton tested positive for Valium use in December 1994. In his proffered testimony he said he took some of his wife's pills for "probably about a year, something like that, it was not an everyday thing, just when I couldn't rest." He acknowl-

edged it "could have been possible" that he had taken some Valium on the day Nedrow purchased the glass replacement.

The trial court initially ruled the employee could testify in a "limited way" regarding the drug test and would permit the attorneys to impeach the employee with his proffered testimony if necessary. After an additional proffer, the trial court ruled he was not going to allow the evidence, ruling it would be prejudicial.

■ The trial judge has discretion concerning the admission of evidence and that ruling will not be disturbed on appeal absent an abuse of that discretion. *Washington v. Whitaker,* 317 S.C. 108, 451 S.E.2d 894 (1994). Evidence is relevant and admissible if it tends to establish or make more or less probable some matter in issue. *Hoeffner v. Citadel,* 311 S.C. 361, 429 S.E.2d 190 (1993); Rule 401, SCRE.

Nedrow testified she gave Skelton the necessary information to obtain glass for the heater, and he presented two pieces of glass for her to choose from. There was evidence that neither piece of glass corresponded to the model number Nedrow provided. Nedrow said he did not tell her to return the glass if it didn't fit the heater. Skelton testified that although he did not remember selling the glass to Nedrow, he always told customers to return the glass if it did not fit. Whether Skelton gave the correct glass to Nedrow and whether he told her to return it became issues at trial.

We recognize the trial judge's discretion, but in this instance we find the trial judge erred in refusing to admit the evidence of Skelton's use of Valium.[2] There was evidence Skelton may have taken Valium on the day he sold Nedrow the glass. The testimony of Skelton's use of Valium would have directly affected his credibility. The testimony tended to make more or less probable issues that were 'of consequence' to the determination of this action, and it should have been presented to the jury. We reverse the jury's verdict as to Piedmont.

---

2. The trial judge properly refused to admit the testimony concerning Skelton's use of Cocaine and other disciplinary action taken against him.

## II.

Negligence actions, such as this one, may be brought under the RLTA. *See Pryor v. Northwest Apartments, Ltd.,* 321 S.C. 524, 469 S.E.2d 630 (Ct.App.1996); *Watson v. Sellers,* 299 S.C. 426, 385 S.E.2d 369 (Ct.App.1989) (the RLTA creates a right in tort for breach of a duty owed by the landlord to the tenant). "As with any negligence action, plaintiff must establish (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach." *Pryor,* 321 S.C. at 528, 469 S.E.2d at 633 (citation omitted).

Nedrow argues the trial court erred in refusing to charge the jury that a landlord owes a non-delegable duty not to create unsafe conditions on the property and a duty to make sure any repairs he has undertaken are done properly. Nedrow relies on *Durkin v. Hansen,* 313 S.C. 343, 348, 437 S.E.2d 550, 553 (Ct.App.1993) ("[A] landlord owes his tenants a non-delegable duty not to create unsafe conditions on premises and is thus vicariously liable for torts of his independent contractor.").

The landlord in *Durkin* hired a carpet cleaning service to clean a tenant's carpet.[3] The tenant slipped on a soapy substance left on the kitchen floor by the carpet cleaners. The court held that a non-delegable duty of reasonable care arose when the landlord undertook to clean the carpet. In its analysis, the court stated the general rule that a landlord is not liable for the negligence of an independent contractor. The court then noted an exception to the general rule, that a "person who delegates to an independent contractor an absolute duty owed to another person remains liable for the negligence of the independent contractor just as if the independent contractor were an employee." *Durkin,* 313 S.C. at 347, 437 S.E.2d at 553. In *Durkin,* the landlord's absolute duty arose when the landlord undertook the gratuitous carpet cleaning. *Durkin,* 313 S.C. at 348, 437 S.E.2d at 553.

In adopting the RLTA, the General Assembly expressly provided that the landlord has a duty to make all repairs and to do whatever is reasonably necessary to keep the premises

---

3. The carpet cleaning was not requested by the tenant.

in a fit and habitable condition. *Watson, supra;* S.C.Code Ann. § 27–40–440 (1991). Therefore, the RLTA placed an absolute duty on Pruitt to fix the heater.

"A landlord who employs an independent contractor to perform a duty which the landlord owes to his tenant to maintain the leased property in a reasonably safe condition is subject to liability to the tenant for physical harm caused by the contractor's failure to exercise reasonable care to make the leased property reasonably safe." *Restatement (Second) of Property* § 19.1 (1977). In *Simmons v. Tuomey Regional Medical Center,* 330 S.C. 115, 498 S.E.2d 408 (Ct.App.1998) (hospitals have a non-delegable duty to render competent service to the patients of emergency rooms), *cert. granted,* (Apr. 8, 1999), this court noted the "real effect of finding a duty to be non-delegable is to render not the duty, but the liability, not delegable; the person subject to a non-delegable duty is certainly free to delegate the duty, but will be liable to third parties for any negligence of the delegatee, regardless of any fault on the part of the delegator." *Id.* at 123, 498 S.E.2d at 412 (*citing* Martin C. McWilliams, Jr. & Hamilton E. Russell, III, *Hospital Liability for Torts of Independent Contractor Physicians,* 47 S.C.L.Rev. 431, 452 (1996)).

Pruitt argues *Durkin* is not applicable to this case because he claims he did not attempt to repair the heater and he did not hire anyone to repair it. However, there is evidence in the record that Pruitt instructed Nedrow to hire Piedmont to repair the heater.[4]

We find the *Durkin* theory of liability is applicable to this case. Under the facts of this case, Pruitt had a non-delegable duty to use reasonable care to not create unsafe conditions on the premises. He is not insulated from liability through his attempt to use an independent contractor, Piedmont, to effect repairs on the heater.

The jury's verdict in favor of Pruitt is reversed.

---

4. We recognize that a landlord and tenant may agree in writing that the tenant perform repairs under S.C.Code Ann. § 27–40–440(c). In the rental agreement, Pruitt and Nedrow agreed that Nedrow would repair items damaged by her negligence. It is a jury question as to whether this repair falls under that section of the rental agreement.

## III.

Nedrow next challenges the trial court's charge regarding a tenant's failure to comply with S.C.Code Ann. § 27–40–510 (1991).[5] While Nedrow concedes the charge correctly states the law, she claims it was error to charge the statute in a negligence action by a tenant in a personal injury case. Nedrow contends that because Pruitt did not counterclaim or take other legal action against her, that the trial court "needlessly confused the jury" and gave Pruitt the benefit of the statute when no such benefit was envisioned by the legislature. We disagree.

After the trial court charged the jury, Nedrow did not object to the charge on § 27–40–510. During the jury's deliberation, they requested to be recharged on § 27–40–510. Nedrow objected after the jury was recharged. In light of the supreme court's recent decision in *Keaton v. Greenville Hospital System*, 334 S.C. 488, 514 S.E.2d 570 (1999), Nedrow's on the record objection and trial court's ruling are sufficient to survive the preservation hurdle.

In *Keaton*, Keaton did not object to the questioned charge during a charging conference. *Id.* The court charged the jury, omitting the questioned charge. *Id.* The Hospital objected to the omission, then Keaton objected to the charge for the first time and explained his reasons. *Id.* The trial court overruled Keaton's objection, recharged the jury including the questioned charge, then instructed the jury to deliberate. *Id.* Thereafter, Keaton did not renew his objection. *Id.* The supreme court ruled the issue was preserved. *Id.* The supreme court quoted *State v. Johnson*, 333 S.C. 62, 65 n. 1, 508 S.E.2d 29, 31 n. 1 (1998): "where a party requests a jury charge and, after opportunity for discussion, the trial judge declines the charge, it is unnecessary, to preserve the point on appeal, to renew the request at [the] conclusion of the court's

---

5. That provision requires a tenant, among other things, to:

    (2) keep the dwelling unit and that part of the premises that he uses reasonably safe and reasonably clean ...

    (5) use in a reasonable manner all electrical, plumbing, sanitary, heating, ventilating, air-conditioning, and other facilities and appliances including elevators in the premises ...

S.C.Code Ann. § 27–40–510 (1991).

instruction." Nedrow's failure to renew her objection after the jury retired, therefore, does not prevent this court from reviewing the trial court's ruling.

■ Although Pruitt did not seek affirmative relief from Nedrow for failure to comply with the statutory provisions, he did claim comparative negligence on her part. The RLTA is a source of a duty that the jury may use to determine whether Nedrow was comparatively negligent. Only after finding Nedrow breached some duty could the jury have determined the parties' comparative negligence. Accordingly, we find no error.

## IV.

Relying on *Davenport v. Cotton Hope,* 325 S.C. 507, 482 S.E.2d 569 (Ct.App.1997), *aff'd as modified,* 333 S.C. 71, 508 S.E.2d 565 (1998),[6] Nedrow argues the trial court erred in denying Nedrow's motion to strike the defense of assumption of the risk. As a corollary to this argument, she argues the trial court erred by charging the defense. *Davenport,* however, applies only to causes of action accruing after the date of the supreme court opinion. *Davenport, supra.* Because Nedrow's injuries occurred before that date, *Davenport* does not apply.

**REVERSED and REMANDED.**

HOWELL, C.J., and HOWARD, J., concur.

---

**6.** The court of appeals held that assumption of the risk was no longer a complete defense to a negligence claim. Instead, based on the modified version of comparative negligence, it should be treated as another facet of comparative negligence rather than an absolute bar to recovery. *Davenport, supra.* The supreme court modified that holding noting that express and primary implied assumption of risk remain unaffected. Express assumption of risk applies when parties expressly agree in advance, either in writing or orally, that the plaintiff will relieve the defendant of his or her legal duty toward the plaintiff. Primary implied assumption of risk arises when the plaintiff impliedly assumes those risks that are inherent in a particular activity. *Davenport, supra.*